IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

SEPTEMBER 2013 TERM

_____

No. 12-0153

_____

FILED

September 26, 2013

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STEVEN O. DALE, ACTING COMMISSIONER OF THE
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner

V.

DONNA L. McCORMICK,
Respondent

_____

Appeal from the Circuit Court of Lincoln County
Honorable Jay M. Hoke, Judge
Civil Action No. 08-AA-1

REVERSED AND REMANDED

_____

Submitted:  September 10, 2013
Filed:  September 26, 2013

Janet E. James
Senior Assistant Attorney General
Charleston, West Virginia
Attorney for Petitioner

David O. Moye
Hurricane, West Virginia
Attorney for Respondent

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.      "Evidentiary findings made at an administrative hearing should not be reversed unless they are clearly wrong."  Syllabus point 1, *Francis O. Day Co., Inc. v. Director, Division of Environmental Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994).

2.      "The horizontal gaze nystagmus test is a field sobriety test, and a driver's performance on the test is admissible as evidence that the driver may have consumed alcohol and may, therefore, be impaired.  The results of the horizontal gaze nystagmus test are entitled to no greater weight than other field sobriety tests such as the walk-and-turn test and the one-leg stand test."  Syllabus point 1, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).

3.      "Upon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test, and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver."  Syllabus point 2, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).

4. "Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol." Syllabus point 2, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

**Per Curiam:**

This appeal was brought by Steven O. Dale, Acting Commissioner of the West Virginia Division of Motor Vehicles ("DMV"),[1] from an order of the Circuit Court of Lincoln County that reinstated the revoked driver's license of Donna L. McCormick. Before this Court, DMV contends that the circuit court erred in disregarding evidence of field sobriety and intoximeter tests and in determining that DMV's revocation order was biased, prejudicial and reached in a preconceived manner. After a careful review of the briefs, record submitted on appeal and listening to the arguments of the parties,[2] we reverse and remand for reinstatement of DMV's revocation order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In the early morning hours of January 6, 2007, Trooper D.J. Miller was traveling[3] on Route 3 in Griffithsville, West Virginia, when he observed a car traveling toward him swerving and crossing the centerline. The car, which was being driven by Ms. McCormick, made a U-turn and drove onto Sugar Tree Road. Ms. McCormick stopped the

---

[1]Pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure, this Court has substituted as petitioner Steven O. Dale, Acting Commissioner of the DMV, in lieu of his predecessor Joe E. Miller.

[2]Counsel for DMV presented oral argument on its behalf, but counsel for Ms. McCormick waived the right to oral argument.

[3]Trooper Miller was accompanied in the patrol car by Trooper Perdue.

1

car in a parking area, but half of the car remained in the roadway. After Trooper Miller approached Ms. McCormick, he detected an odor of alcohol coming from the vehicle. He further observed her eyes were glassy, her speech was slurred, and she was unsteady and staggering while walking on the roadside. Ms. McCormick admitted to Trooper Miller that she previously had drank two mixed alcoholic beverages, that she was drinking while driving, and that she had poured out alcohol from her window before she stopped.[4]

Trooper Miller administered three field sobriety tests to Ms. McCormick. She failed all three tests.[5] Ms. McCormick was placed under arrest for DUI and taken to the town hall in Hamlin, West Virginia. While at the town hall, Trooper Miller performed an Intoximeter chemical test of Ms. McCormick's breath. The results of the chemical test indicated that Ms. McCormick had a blood-alcohol content level of .105 at the time the test was administered.[6]

---

[4]Trooper Miller observed Ms. McCormick drop something out of her car window before she stopped.

[5]The field sobriety tests were: the walk and turn, the one leg stand, and the horizontal gaze nystagmus test.

[6]By statute, an individual who operates a motor vehicle with a blood-alcohol level of .08 or higher has committed the offense of DUI. *See* W. Va. Code § 17C-5-2 (2010) (Repl. Vol. 2013).

2

As a result of Ms. McCormick's arrest for DUI, her driver's license was revoked for six months. Ms. McCormick challenged the revocation and a hearing was held in April 2007. Subsequent to the hearing, DMV issued an amended final order in 2009 revoking Ms. McCormick's driver's license for six months.[7] Ms. McCormick appealed the revocation to the circuit court. In 2012, the circuit court issued an order reversing DMV's amended final order. This appeal was thereafter prosecuted by DMV.

## II.

## STANDARD OF REVIEW

The circuit court order appealed in this case is a reversal of the DMV's revocation of Ms. McCormick's driver's license. Our review of an appeal from a circuit court's decision involving an administrative agency order is governed by the standard set forth in syllabus point one of *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Moreover, as this Court explained in *Modi v. West Virginia Board of Medicine*, 195 W. Va. 230, 239, 465 S.E.2d 230, 239 (1995),

---

[7]The circuit court reversed the initial final order and remanded the case to DMV for further proceedings.

findings of fact made by an administrative agency will not be disturbed on appeal unless such findings are contrary to the evidence or based on a mistake of law. In other words, the findings must be clearly wrong to warrant judicial interference. Accordingly, absent a mistake of law, findings of fact by an administrative agency supported by substantial evidence should not be disturbed on appeal.

(Citations omitted). With these standards in mind, we now consider the parties' arguments.

## III.

## DISCUSSION

### A. Field Sobriety Tests

On appeal to this Court, DMV asserts that the circuit court disregarded evidence of field sobriety and intoximeter tests. Each issue will be addressed separately.[8] Trooper Miller administered three field sobriety tests to Ms. McCormick prior to placing her under arrest. Those tests included the walk and turn, the one leg stand, and the horizontal gaze nystagmus test. In its reversal of DMV's revocation order, the circuit court found that the field sobriety tests were not administered according to law. In making this determination, the circuit court set out the following in its order:

9. Petitioner was never given the opportunity [to] take the field sobriety tests as promulgated by the West Virginia State Police Academy and in accordance to the NHTSA standards.

---

[8] A third, non-dispositive issue is addressed summarily, *infra*, in note 14 of this opinion.

4

. . . .

19. Pursuant to *Bias v. Cline*,[9] the officer must administer the field sobriety tests according to the methods and procedures instructed at the West Virginia State Police Academy and in accordance with the National Highway Traffic Safety Administration, or NHTSA.

20. According to *Bias*, the Court has "determined that in order to use field sobriety tests to determine whether there is probable cause to arrest a driver, they must be administered in strict compliance with the procedures prescribed by the NHTSA."

(footnote added).

The above passages from the circuit court's order represent the sum total of all the findings relied on by the court to conclude that Trooper Miller did not perform the field sobriety tests according to law. The circuit court's order does not cite one example of something Trooper Miller was required to do, but failed to do. The order merely restated an unsupported conclusion three times. We find no basis in the trial court's order that supports its rejection of the evidence of the field sobriety tests.

Moreover, in our review of Trooper Miller's testimony, we find that he provided sufficient evidence that he properly administered the field sobriety tests. During the administrative hearing, Trooper Miller testified in relevant part as follows:

[9]During oral argument it was indicated that the case styled "*Bias v. Cline*," was a standing circuit court decision, not a decision rendered by this Court.

Tpr. Miller: She was the driver. I asked her if she had anything to drink. She said she had, had two mixed drinks that evening. I got her out of the vehicle. Performed a set of field sobriety tests on her. I demonstrated them to her as well. When she was getting out of the vehicle, she kind of, kind of waddled, you know, a little bit, I could tell she wasn't real steady exiting. The first one I done was the horizontal gaze nystagmus, which is with the eyes. I told her, I demonstrated what I was going to do and she did show nystagmus in both eyes. Her eyes were glassy. I then done the walk-and-turn test. She failed it as well. She wasn't able to complete it. She was, she almost fell when she was making the turn. She was raising her hands up. She was missing heel-to-toe. She stepped off the line. She completely failed it as well. The last test I done was the one-leg stand. She, she failed it bad too. She [was] swaying and hopping up and down, using her arms. I demonstrated it to her before and she completely failed it. . . .

The hearing examiner determined this evidence was sufficient to find that Trooper Miller properly performed the field sobriety tests. The circuit court summarily rejected this evidence without any showing that the hearing examiner was clearly wrong in crediting the evidence. This Court has made clear that "[e]videntiary findings made at an administrative hearing should not be reversed unless they are clearly wrong." Syl. pt. 1, *Francis O. Day Co., Inc. v. Director, Div. of Envtl. Prot.*, 191 W. Va. 134, 443 S.E.2d 602 (1994).

Although the circuit court's order failed to set out an adequate basis for rejecting the evidence of Trooper Miller's field sobriety tests, Ms. McCormick made two objections to the testimony during the hearing: (1) failure to lay a foundation and (2) proof

6

of general acceptance of the horizontal gaze nystagmus test. Both objections are raised in this appeal.

**(1) Failure to lay a foundation**. During the hearing before the DMV, Ms. McCormick objected to the field sobriety evidence on the general grounds that "Trooper Miller has failed to testify and lay a proper foundation based on, on the National Highway Traffic Safety Administration standards as, as instructed at the West Virginia State Police Academy." Other than making this statement during the hearing, Ms. McCormick did not indicate specifically what general foundation was required and omitted. Ms. McCormick's brief in this proceeding has set out arguments that may loosely be associated with her "foundation" objection.

Here, Ms. McCormick argues that the walk and turn test was not administered properly because Trooper Miller was required to ask her if she had any medications and/or injuries that would prevent her from taking the test. We reject this argument for two reasons. First, assuming for the sake of argument that Trooper Miller failed to make the inquiries alleged by Ms. McCormick, such failure would have gone to the weight of the evidence, not its admissibility. Second, the record is clear in showing that Trooper Miller did, in fact, testify that he asked Ms. McCormick about any medication or medical condition that would

7

prevent her from performing the test. In fact, Ms. McCormick admitted during questioning by her counsel that Trooper Miller inquired about her health.[10]

Ms. McCormick's brief argues that evidence of the one leg stand test was not admissible because "NHTSA state[s] that the person can choose either foot they wish to stand on, while holding the other foot off of the ground. . . . Obviously, if McCormick could not exercise the option, the test would be invalid if she were forced to stand on the non-deformed foot." This argument makes little sense. First, Ms. McCormick has not argued that Trooper Miller in fact failed to give her an option of what leg to stand on. Ms. McCormick has only contended that such an option was required. Second, the record in this case is quite clear in showing that Ms. McCormick testified that her right foot was deformed

---

[10] Ms. McCormick was questioned about the issue as follows:

Counsel: Okay. Do you recall Trooper Miller testifying to the fact that he had asked you at that point if you had any disabilities or injuries that would've prevented you from taking that test?

Ms. McCormick: Yes.

Counsel: Okay. And do you recall what your response to him was when he asked you that?

Ms. McCormick: I told him eight years ago I had broke my foot. And I had problems walking and my foot is deformed. And I have a hard time walking anytime.

8

and that Trooper Miller's report "noted that [she] performed this test on [her] left foot[.]" In other words, the harm Ms. McCormick alleges would occur from not giving her an option to choose which foot to stand on, did not occur because she did not perform the test on her deformed foot.

**(2) Proof of general acceptance of the horizontal gaze nystagmus test**. During the administrative hearing and in this appeal, Ms. McCormick contends that evidence of the horizontal gaze nystagmus test was not admissible because Trooper Miller did not comply with Syllabus point 1 of *State v. Barker*, 179 W. Va. 194, 366 S.E.2d 642 (1988), in seeking to admit the evidence. Syllabus point 1 of *Barker* provides that "'[i]n order for a scientific test to be initially admissible, there must be general acceptance of the scientific principle which underlies the test.' Syl. pt. 7, *State v. Clawson*, 165 W. Va. 588, 270 S.E.2d 659 (1980)." We reject Ms. McCormick's reliance on Syllabus point 1 of *Barker*.

First, Ms. McCormick has failed to realize that the "general acceptance" test under *Barker* and *Clawson* was expressly overruled by *Wilt v. Buracker*, 191 W. Va. 39, 443 S.E.2d 196 (1993).[11]  *See State v. Leep*, 212 W. Va. 57, 67, 569 S.E.2d 133, 143 (2002) ("[T]he prior 'general acceptance' standard . . . is obsolete and has been replaced by the more

---

[11]*Barker* also was overruled on other grounds.  *See State v. Nichols*, 208 W. Va. 432, 541 S.E.2d 310 (1999); *modified on other grounds by State v. McCraine*, 214 W. Va. 188, 588 S.E.2d 177 (2003).

liberal determinative criteria enunciated in *Daubert*, *Wilt*, *Gentry*, and Rule 702 of the

Federal and West Virginia Rules of Evidence."); Robin Jean Davis, *Admitting Expert*

*Testimony in Federal Courts and Its Impact on West Virginia Jurisprudence*, 104

W. Va. L .Rev. 485, 510 (2002) (discussing the rejection of the "general acceptance" test by

this Court and federal courts). Second, this Court has recently clarified the standards

applicable to the admission of evidence of the horizontal gaze nystagmus test. In Syllabus

points 1 and 2 of *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012), this Court held

the following regarding the admissibility of evidence of horizontal gaze nystagmus test:

> 1. The horizontal gaze nystagmus test is a field sobriety test, and a driver's performance on the test is admissible as evidence that the driver may have consumed alcohol and may, therefore, be impaired. The results of the horizontal gaze nystagmus test are entitled to no greater weight than other field sobriety tests such as the walk-and-turn test and the one-leg stand test.

> 2. Upon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test, and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver.

Under the principles set out in *White*, Trooper Miller properly admitted

evidence of his administration of the horizontal gaze nystagmus test to Ms. McCormick and

10

her failure to pass the same. To the extent that Ms. McCormick believed Trooper Miller did not perform the test in accordance with the law, she was required to question Trooper Miller in this area. Moreover, even if Trooper Miller failed to satisfy some requirement for administering the horizontal gaze nystagmus test, such failure "went to the weight of the evidence, not its admissibility." *In re Flood Litigation Coal River Watershed*, 222 W. Va. 574, 582, 668 S.E.2d 203, 211 (2008).

In sum, the record in this case does not contain any evidence that would justify excluding any of the field sobriety test results. Therefore, it was error for the circuit court to exclude evidence of the results of the field sobriety tests.

### B. Exclusion of the Intoximeter Test Result

During the administrative hearing, Trooper Miller testified that the Intoximeter test showed that Ms. McCormick's blood-alcohol content was .105, which was above the legal limit. The circuit court's order states that the evidence would not be considered because Trooper Miller testified during the administrative hearing, "that he could have left the building and room where the Intoximeter ECIRII was located, thus prohibiting hi[m] from conducting the necessary 20 minute observation period prior to administering the test to Petitioner." DMV now argues that the circuit court erred in excluding the result of the Intoximeter test. We agree.

11

We begin by noting that an observation period is required by a State administrative regulation before the Intoximeter test is administered. The following is set out under 64 C.S.R. 10, § 7.2(a):

> The law enforcement officer shall keep the person being tested under constant observation for a period of twenty minutes before the test is administered to insure that the person has nothing in his or her mouth at the time of the test and that he or she has had no food or drink or foreign matter in his or her mouth during the observation period.

For purposes of the issue presented in this case, we find the regulation is plain, unambiguous and needs no interpretation *See* Syl. pt. 1, *Ohio County. Comm'n v. Manchin*, 171 W. Va. 552, 301 S.E.2d 183 (1983) ("Judicial interpretation of a statute [or regulation] is warranted only if the statute [or regulation] is ambiguous[.]"). Under the regulation, a suspect being administered the Intoximeter test must be under observation for twenty minutes before the test is given. "The purpose of the [twenty]-minute waiting period is to ensure that the [person] has not brought any substance into [her] mouth, such as food, drink, or regurgitation by burping or by hiccoughing, that would have had a contaminating impact on the accuracy of the results, and to permit a sufficient lapse in time to allow such possible contaminants to clear." *Commonwealth v. Zeininger*, 947 N.E.2d 1060, 1072 (Mass. 2011) (internal quotations and citation omitted).

12

No evidence was presented to show that Ms. McCormick ingested any substance during the twenty minute waiting period.[12] The dispute that was presented during the administrative hearing was whether Trooper Miller remained present in the room with Ms. McCormick for the entire twenty minutes. Ms. McCormick testified that Trooper Miller and Trooper Perdue were present in the room, but that Trooper Miller left the room to assist other police officers with a disturbance at a nearby school. Trooper Miller testified that he did not leave the room and that he believed it was Trooper Perdue who left the room to assist the disturbance at the school. However, at one point during his testimony, Trooper Miller did waiver temporarily and stated that he could not remember if he left the room.

In our review of the record, we find that the observation requirement under 64 C.S.R. 10, § 7.2(a) was met. Assuming that Trooper Miller did in fact leave the room, his absence did not violate the observation requirement under the regulation. No violation occurred because Ms. McCormick testified that Trooper Perdue remained in the room during the observation period. The regulation, by its own terms, only requires a suspect be constantly observed for twenty minutes. The regulation does not require the observation be made by the person who administers the Intoximeter test. Thus, although Trooper Miller

---

[12]Ms. McCormick testified during the hearing that she ingested a cough drop before the twenty minute waiting period began.

13

administered the test, he was not precluded from leaving the room so long as Ms. McCormick was being observed by Trooper Perdue.

A similar conclusion was reached in *State v. Bradley*, 817 P.2d 1090 (Idaho App. 1991), *superseded by rule on other grounds as recognized in State v. Sheahan*, 878 P.2d 810 (Idaho App. 1994). In *Bradley*, the defendant was convicted by a magistrate of driving while under the influence of alcohol. One of the issues raised by the defendant on appeal was that evidence of his Intoximeter test result should not have been admitted into evidence. The defendant argued that the test result should have been excluded because the police officer who observed him for the requisite time before the test was administered was not the officer who administered the test. The appellate court in *Bradley* rejected the argument as follows:

> It is plain from the language of the manual that a fifteen-minute observation is part of the "operating procedure" for conducting a breath test with the Intoximeter. However, the state urges that where, as here, the certified operator fails to make the preliminary observation of the test subject, an uncertified officer's observations may serve as a substitute. We agree.
>
> Nothing in the manual expressly mandates that only a certified officer can observe the subject for the required fifteen minutes before administration of the Intoximeter test. Indeed, a defense witness . . . testified that the manual does not specifically state that a particular person must do the observation. Although the [witness] testified that it is suggested that the certified operator be the person who observes the subject, the manual does not mandate this procedure.

14

*Bradley*, 817 P.2d at 1093.

Returning to the present case, in its final analysis, the hearing examiner credited Trooper Miller's testimony over that of Ms. McCormick. The hearing examiner found that Trooper Miller "observed [Ms. McCormick] for a period of twenty minutes prior to administration of the secondary chemical test, during which [Ms. McCormick] had no oral intake." The circuit court erred in disturbing this credibility determination. Our cases have "recognized that credibility determinations by the finder of fact in an administrative proceeding are binding unless patently without basis in the record." *Webb v. West Virginia Bd. of Medicine*, 212 W. Va. 149, 156, 569 S.E.2d 225, 232 (2002) (internal quotations and citation omitted). That is, "[c]redibility determinations made by an administrative law judge are . . . entitled to deference." Syl. pt. 1, in part, *Cahill v. Mercer Cnty. Bd. of Educ.*, 208 W. Va. 177, 539 S.E.2d 437 (2000). "This is so because the hearing examiner who observed the witness testimony is in the best position to make credibility judgments." *Sims v. Miller*, 227 W. Va. 395, 402, 709 S.E.2d 750, 757 (2011).[13]

---

[13]The decision in *Sims* summarily addressed a conflict involving an officer's testimony that he observed the driver for the requisite time before administering the Intoximeter test. *Sims* found that the circuit court committed error in disturbing DMV's determination that the officer properly observed the driver. *See Groves v. Cicchirillo*, 225 W. Va. 474, 477, 694 S.E.2d 639, 642 (2010) (summarily rejecting trial court's finding that "the deputy's testimony did not . . . establish that the deputy had observed Appellee for twenty minutes before the test was administered[.]").

We must also note that, even if the trial court was correct in disregarding evidence of the Intoximeter test, the evidence in this case still was sufficient to sustain DMV's revocation order. It has been recognized that our DUI laws do not "require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license." *Albrecht v. State*, 173 W. Va. 268, 272, 314 S.E.2d 859, 864 (1984). We held in syllabus point 2 of *Albrecht* that,

> [w]here there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, and had consumed alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

The facts of this case demonstrate that Trooper Miller observed Ms. McCormick driving erratically. When she parked her car, she left half of it in the roadway. Her speech was slurred. She staggered when she walked and was unsteady while standing. An odor of alcohol was in her car and on her breath. She admitted to drinking two mixed drinks and to drinking while driving. The evidence also showed that Ms. McCormick failed three field sobriety tests. "We find that these facts provide sufficient evidence to support the conclusion that [Ms. McCormick] was driving a motor vehicle while under the influence of alcohol, with or without the Intoximeter results, and thus represent an adequate basis for the

16

Commissioner to revoke [Ms. McCormick's] driver's license." *Groves v. Cicchirillo*, 225

W. Va. 474, 481, 694 S.E.2d 639, 646 (2010).[14]

## IV.

## CONCLUSION

In view of the foregoing, the circuit court's order is reversed. This case is remanded for reinstatement of DMV's order revoking Ms. McCormick's license to drive a motor vehicle for a period of six months.

Reversed and Remanded.

---

[14]We summarily reject the circuit court's determination that DMV's decision was biased, prejudiced and reached in a preconceived manner. Other than making a conclusory statement of bias and prejudice, the order did not cite to any facts to support this allegation. We also note that Ms. McCormick failed to address this issue in her brief.