IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

_____

No. 13-0761

_____

**FILED**
**June 6, 2014**
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STEVEN O. DALE, ACTING COMMISSIONER OF
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Respondent Below, Petitioner

v.

DONALD OAKLAND,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Marshall County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 13-CAP-3

REVERSED AND REMANDED

_____

Submitted: March 26, 2014
Filed: June 5, 2014

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
DMV – Attorney General's Office
Charleston, West Virginia
Counsel for the Petitioner

J. Thomas Madden III, Esq.
Madden Law Offices
Glen Dale, West Virginia
Counsel for the Respondent

Robert G. McCoid, Esq.
McCamic, Sacco & McCoid, PLLC
Wheeling, West Virginia
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

SYLLABUS BY THE COURT

1. "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented de novo; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus Point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

2. "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syllabus Point 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3. "Where objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." Syllabus Point 1, *State Road Comm'n v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964).

4. "Upon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, if asked, should be prepared to give testimony concerning whether

i

he or she was properly trained in conducting the test, and assessing the results, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver." Syllabus Point 2, *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012).

5.     "The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syllabus Point 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996).

6.     "There are no provisions in either W. Va. Code, 17C-5-1 (1981), *et seq*., or W. Va. Code, 17C-5A-1 (1981), *et seq*., that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license." Syllabus Point 1, *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984).

Per Curiam:

The instant case is before the Court upon the appeal of Petitioner Steven O. Dale, Acting Commissioner of the Division of Motor Vehicles ("Commissioner"), from a June 15, 2013, order of the Circuit Court of Marshall County, reversing a final order of the Office of Administrative Hearings ("OAH") that upheld the Commissioner's order revoking Respondent Donald Oakland's privilege to drive a motor vehicle. The Commissioner alleges that the circuit court erred in ignoring all of the evidence presented that Mr. Oakland drove while under the influence of controlled substances and that Mr. Oakland neither objected to nor rebutted the evidence presented by the Commissioner during the proceedings below. Conversely, Mr. Oakland alleges that the circuit court properly concluded that the hearing examiner was clearly wrong in finding that he was under the influence of marijuana at the time the police officer stopped his vehicle. Mr. Oakland also alleges that the Commissioner was without jurisdiction to enter an order suspending his operator's privileges in the absence of any accompanying arrest, because a lawful arrest is a prerequisite to the issuance of any order of suspension. Upon examination of the petition, the response, the submitted appendices, and the arguments of counsel, we conclude that, for reasons set forth more fully below, the circuit court's order should be reversed and remanded for reinstatement of the Commissioner's order revoking Mr. Oakland's license to operate a motor vehicle.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

1

On October 12, 2010, Officer Sean Wilhelm of the Moundsville Police Department, the investigating officer in this matter, observed a blue 2001 Ford Mustang which failed to stop at a stop sign located at Grant Avenue and 3rd Street in Moundsville, Marshall County, West Virginia. Officer Wilhelm initiated a traffic stop of the motor vehicle and identified the Respondent Donald Oakland as the driver of the motor vehicle. Officer Wilhelm detected a strong odor of marijuana emanating from within Mr. Oakland's vehicle as soon as he got behind the vehicle even before he activated the emergency lights.

Officer Wilhelm immediately placed Mr. Oakland in handcuffs, patted him down, and put him in the back of the police cruiser. Officer Wilhelm observed that Mr. Oakland's eyes appeared glassy. Subsequently, Officer Steve Oliver of the Moundsville Police Department arrived at the scene of the traffic stop to provide assistance. Officer Wilhelm noted that Mr. Oakland appeared steady as he exited the vehicle and as he walked to the roadside.

Mr. Oakland admitted to Officer Wilhelm that he had "a joint" and that he smoked marijuana in the car while driving around Moundsville. Officer Wilhelm administered a series of field sobriety tests to Mr. Oakland, including the horizontal gaze nystagmus ("HGN") test, the walk-and-turn test, and the one-leg stand test. Mr. Oakland passed the HGN test. However, he failed the walk-and turn test because during the

instruction phase of the test, he stepped off the line of walk, missed walking in a heel-to-toe manner as instructed, raised his arms for balance, and completed an improper turn. Additionally, Mr. Oakland failed the one-leg stand test because he used his arms for balance and was unable to keep his foot raised off of the ground. After searching Mr. Oakland's car, the officers located a rolled "joint" containing a green leafy substance that they deemed to be marijuana, a partially burnt "joint" and an Altoids tin with a green leafy substance inside. Officer Wilhelm handcuffed Mr. Oakland and transported him to the hospital for the administration of a blood test. Officer Wilhelm waited for the results of the blood test before placing Mr. Oakland under arrest for a criminal offense.

On November 9, 2010, the DMV revoked Mr. Oakland's license. On December 2, 2010, Mr. Oakland requested an administrative hearing before the Office of Administrative Hearings ("OAH"). On January 7, 2011, Mr. Oakland appeared at the administrative hearing and was represented by counsel; however, Mr. Oakland did not testify at the hearing. At the time of the hearing, Officer Wilhelm had not received the results of the blood test but the hearing examiner found that they were not necessary pursuant to Syl. Pt. 4, *Coll v. Cline*, 202 W.Va. 599, 505 S.E.2d 662 (1998). The OAH upheld the driver's license revocation due to DUI of controlled substances. Mr. Oakland appealed to the Circuit Court of Marshall County which entered a June 15, 2013 order, reversing the decision of the OAH finding that "the material findings of fact upon which the adverse legal conclusions are based are without any basic foundational support." The circuit court found the hearing examiner's findings "so fatally flawed that the [c]ourt is at

3

a loss to adequately describe same other than to say that such were arbitrary, capricious, an abuse of discretion, and a clearly unwarranted exercise of discretion." The circuit court noted that the record did not establish either officer's training or ability to identify marijuana by sight or scent, and failed to show that either officer was capable of giving a field sobriety test. This appeal followed.

## II.

## STANDARD OF REVIEW

With regard to the standard of review, this Court has held that

> [o]n appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A–5–4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. Pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Furthermore,

> [i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

Syl. Pt. 2, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Guided by these standards, we proceed to consider the parties' arguments.

## III.

## ANALYSIS

4

The Commissioner alleges that the circuit court erred in ignoring all of the evidence presented that Mr. Oakland drove while under the influence of controlled substances. Furthermore, the Commissioner asserts that Mr. Oakland neither objected to nor rebutted the evidence presented by the Commissioner during the proceedings below. The Commissioner contends that because sufficient evidence of DUI was presented below, the circuit court's order reversing the OAH was an abuse of discretion. Conversely, Mr. Oakland alleges that the circuit court properly concluded that the hearing examiner was clearly wrong in concluding that he was under the influence of marijuana at the time the police officer stopped his vehicle.

In reversing the OAH, the circuit court stated,

> The material findings of fact upon which the adverse legal conclusions are based are without any basic foundational support. For example, there is not an iota of testimony or evidence otherwise as to either of the investigating officer's respective education, training, or experience regarding the identification of marijuana by sight and/or scent or how an individual who ingested such might appear if he/she were "under the influence." The same can be said for the education, training, or experience of either officer regarding the administration and interpretation of "series of field sobriety tests" relied upon by the Hearing Examiner. If anything, the testimony on cross-examination evidenced that at least one of the officers was not knowledgeable about the proper administration of The Standardized Field Sobriety Test (SFST) developed by the U. S. Department of Transportation. Moreover, there is absolutely no testimony in the underlying record regarding either officer's credentials whatsoever. Accordingly, the findings of fact are both arbitrary and capricious as well as an abuse of discretion and a clearly unwarranted exercise of discretion.

5

First, Mr. Oakland asserts that there was no evidence that the substance obtained by the officers was marijuana. However, the Commissioner contends that regardless of whether or not the green leafy substance was field or lab tested and regardless of whether or not the officers testified about their education, training, or experience regarding identification of marijuana by sight, Mr. Oakland admitted to Officer Wilhelm that he had a joint and that he smoked marijuana in the car while driving around Moundsville. The hearing examiner addressed this issue in the Final Order:

> Finally, the Petitioner's Counsel asserted that the Officers failed to establish that the green leafy substance found in the motor vehicle was marijuana, and that the Petitioner had smoked the marijuana prior to operating the motor vehicle on the date of the stated offense. However, the Investigating Officer testified that he detected the odor of marijuana emitting from the vehicle, a partially burned marijuana cigarette was located within the motor vehicle and *most significantly, the Petitioner admitted to the Officers while at the scene that he had smoked marijuana.*

(Emphasis added).

We agree with the Commissioner that the hearing examiner did not need the results of field or lab tests to make a determination, based on the totality of the evidence, that the green leafy substance was marijuana and that Mr. Oakland had ingested the same while driving around Moundsville: Mr. Oakland admitted to both. Moreover, Mr. Oakland did not testify at the administrative hearing. Therefore, the officers' testimony remains wholly unrebutted regarding Mr. Oakland's admissions of possession and ingestion. Accordingly, we find that the issue of any field or lab testing of the marijuana is irrelevant.

6

Furthermore, contrary to the circuit court's holding, there was sufficient evidence in the record for the hearing examiner to make the findings of fact which supported the Commissioner's Order of Revocation because the hearing examiner found that the "Investigating Officer detected a strong odor which he identified as marijuana emanating from within the Petitioner's vehicle." The hearing examiner's finding is supported by Officer Wilhelm's testimony that

> [a]s soon as I got behind the vehicle, before I even activated my lights, I could smell the odor of marijuana. I walked up to the vehicle, asked the Defendant [Mr. Oakland] for his license, registration, and insurance. His window was down on the driver's side. At that time I detected a strong odor of burned marijuana.

Mr. Oakland's counsel did not object to this particular testimony. We have repeatedly held that "[w]here objections were not shown to have been made in the trial court, and the matters concerned were not jurisdictional in character, such objections will not be considered on appeal." Syl. Pt. 1, *State Road Comm'n v. Ferguson*, 148 W. Va. 742, 137 S.E.2d 206 (1964). The Commissioner argues that because Mr. Oakland did not testify at the administrative hearing, all of Officer Wilhelm's testimony remains unrebutted.

The hearing examiner found as fact that the "Petitioner admitted to the Officers that he smoked marijuana." This finding is substantiated by Officer Wilhelm's testimony:

7

A. I asked Mr. Oakland if he had any marijuana in the car, and he replied yeah. He said, "I had a joint."

Q. So when you asked him about marijuana, he replied that he did have a joint?

A. Yes.

Q. Did he make any statements as to whether he had consumed -

A. Not at that point.

Q. Not at that point. At any time did he though?

A. Yes.

Again, Mr. Oakland's counsel did not object to this particular testimony, and Mr. Oakland did not rebut Officer Wilhelm's testimony.

Furthermore, the record reveals that the hearing examiner found that the officers conducted a search of "Petitioner's motor vehicle and located a rolled 'joint' containing a green leafy substance that they deemed to be marijuana" and a "partially burnt 'joint' containing a green leafy substance that they believed to be marijuana." The OAH also found that the officers "located an Altoids tin which contained a green leafy substance that they concluded was marijuana." These findings are supported by Officer Wilhelm's testimony:

Q. What was found?

A. A [ sic] approximately 4-inch rolled joint, unburned, as well as a burned joint approximately a quarter inch long, and

8

an Altoids can that had a green leafy substance in it, had the odor of marijuana coming from it.

Q. You referred to I believe a burned joint and an unburned joint. In your experience, what was the substance within the joint?

A. I believed it to be marijuana....

Q. What did you believe that green leafy substance to be within the Altoids can?

A. Also marijuana.

Once again, Mr. Oakland's counsel did not object to this particular testimony, and Mr. Oakland did not rebut Officer Wilhelm's testimony.

Mr. Oakland asserts that while he admitted to smoking marijuana, there was no evidence offered or otherwise introduced reflecting any admission by Mr. Oakland that he was actually under the influence of marijuana while he was driving. He contends that of the three field sobriety tests administered to him, he passed one (HGN), failed one (the walk-and-turn test), and, as to the third, insufficient evidence exists to state whether he passed or failed (the one-leg stand test). While the circuit court concluded that there is not an "iota of evidence" regarding either officer's education, training, or experience of either officer regarding the administration and interpretation of the field sobriety tests, and that there is "absolutely no testimony in the underlying record regarding either officer's credentials whatsoever", we find that these conclusions by the circuit court are not supported by the record.

9

The record reveals that Mr. Oakland received two decisional points on the one-leg stand test, and two or more decisional points constitutes failure of that test. Officer Wilhelm testified at the revocation hearing that one of the points assessed against Mr. Oakland was for raising his arms from his side. Officer Wilhelm also testified that Mr. Oakland put his foot down on count twenty-one of thirty on the one leg stand test. Mr. Oakland contends that Officer Wilhelm conceded on cross-examination that he could not recall the distance that Mr. Oakland raised his arms and that the standard prescribed by the National Highway Transportation Safety Administration ("NHTSA") manual for the administration of standardized field sobriety tests allows a subject to raise his arms up to six inches without failing that portion of the test. However, our review of the record reveals that on cross-examination, Mr. Oakland's counsel asked Officer Wilhelm, "Where did you learn the field sobriety tests? Who taught them to you?" Officer Wilhelm replied, "[a]t the West Virginia State Police Academy." No further inquiry regarding Officer Wilhelm's training was had.

This Court has addressed the admissibility of field sobriety test results in administrative license revocation cases. In syllabus point 2 of *White v. Miller*, 228 W. Va. 797,724 S.E.2d 768 (2012), this Court held that

> [u]pon a challenge by the driver of a motor vehicle to the admission in evidence of the results of the horizontal gaze nystagmus test, the police officer who administered the test, *if asked, should be prepared to give testimony concerning whether he or she was properly trained in conducting the test,*

10

*and assessing the results*, in accordance with the protocol sanctioned by the National Highway Traffic Safety Administration and whether, and in what manner, he or she complied with that training in administering the test to the driver.

*Id.* (emphasis added). This Court has recently revisited the administration of field sobriety tests in *Dale v. McCormick*, 231 W. Va. 628, 749 S.E.2d 227 (2013). Therein we held that,

> [u]nder the principles set out in *White*, Trooper Miller properly admitted evidence of his administration of the horizontal gaze nystagmus test to Ms. McCormick and her failure to pass the same. To the extent that Ms. McCormick believed Trooper Miller did not perform the test in accordance with the law, she was required to question Trooper Miller in this area. Moreover, even if Trooper Miller failed to satisfy some requirement for administering the horizontal gaze nystagmus test, such failure "went to the weight of the evidence, not its admissibility." *In re Flood Litigation Coal River Watershed*, 222 W. Va. 574, 582, 668 S.E.2d 203, 211 (2008).

231 W. Va. at 633, 749 S.E.2d at 232. In *McCormick*, instead of permitting a driver to remain silent at hearing regarding the officer's credentials and administration of the field sobriety test then later object to their absence or admissibility, this Court required the driver to take an active role in questioning the officer about the administration of those tests and credentials. *Id.* Pursuant to this Court's decision in *McCormick*, if Mr. Oakland had a serious inquiry or challenge to the quality or quantity of Officer Wilhelm's response about his credentials, the onus was on Mr. Oakland to inquire further.

11

Accordingly, the circuit court erred in concluding that there was "absolutely no testimony in the underlying record regarding either officers' credentials whatsoever."

Mr. Oakland asserts that nothing in *White* or *Miller* states that the officer may simply state that an operator has failed a standardized field sobriety test without also relating how such failure constitutes proof of the operator's impairment. Mr. Oakland contends that in the matter *sub judice*, arresting Officer Wilhelm neglected to state how, exactly, failing a field sobriety test constitutes evidence of being under the influence of drugs. The record reveals that the OAH hearing examiner addressed Mr. Oakland's argument about the admissibility of the field sobriety tests and the weight which the hearing examiner gave the tests:

> Although the Petitioner's Counsel attempted to argue that the results of the field sobriety tests should not be considered in this matter since these test [ sic] were designed to be used by law enforcement officers as a guide to determine whether a driver is under the influence of alcohol, and not controlled substances or drugs, these tests are indicators of impairment. The battery of standardized field sobriety tests, which were developed by the National Highway Traffic Safety Administration after extensive research, are "divided attention" tests that are easily performed by most unimpaired people. They merely require a suspect to listen and follow instructions while performing simple physical movements. Impaired persons have difficulty with tasks requiring their attention to be divided between simple mental and physical exercises.

"The 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision

12

is supported by substantial evidence or by a rational basis." Syllabus Point 3, *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996). We find that the hearing examiner's decision was supported by the substantial evidence presented, and the circuit court abused its discretion in substituting its judgment for that of the fact finder below. It is unrebutted that Mr. Oakland, who was operating his motor vehicle on the streets of Moundsville, West Virginia, admitted to Officer Wilhelm that he had smoked marijuana while driving around town. Further, it is unrebutted that Mr. Oakland ignored stopping at a stop sign and had glassy eyes. The circuit court failed to address this other indicia of impairment in its order reversing the OAH's order upholding Mr. Oakland's license revocation. Even if we assumed for the sake of argument that the results of the field sobriety tests were inadmissible to prove that Mr. Oakland was under the influence of marijuana, sufficient evidence exists in this case to substantiate that Respondent was under the influence, as he admitted to smoking marijuana, had glassy eyes, and he roll-stopped through a stop sign.

Lastly, Mr. Oakland alleges that the Commissioner was without jurisdiction to enter an order suspending his operator's privileges in the absence of an accompanying arrest, because a lawful arrest is a prerequisite to the issuance of any order of suspension.[1]  The record indicates that Officer Wilhelm waited for the results of the

---

[1] Although the circuit court's Order reversing the OAH decision did not address the "non-arrest" issue, the record reveals that Mr. Oakland raised it at the OAH hearing and, again, in both his Petition for Judicial Review and his Brief and Memorandum of Law seeking
(continued . . .)

blood test before placing Mr. Oakland under arrest for a criminal offense and that Mr.

Oakland has never been arrested for any offense related to the events of October 12,

2010.

Mr. Oakland contends that W. Va. Code § 17C-5A-1(c) mandates that a

lawful arrest occur. This Code section provides, in pertinent part, that

> [i]f upon examination of the written statement of the officer
> and the test results described in subsection (b) of this section,
> the commissioner shall determine that a person was arrested
> for an offense described in [W. Va. Code § 17C-5-2]. . . and
> that. . . at the time the person was arrested he or she was
> under the influence of. . . controlled substances or drugs, the
> commissioner shall make and enter an order revoking the
> person's license to operate a motor vehicle in this state. . . .

West Virginia Code § l7C-5A-1(c) (2008). Mr. Oakland contends that other relevant

sections of the Code make clear that the Legislature contemplated that an actual arrest for

driving under the influence of alcohol or drugs is a mandatory prerequisite to the issuance

of any order of suspension. *See, e.g.*: W. Va. Code § 17C-5-4(c) (addressing a secondary

chemical test "incidental to a lawful arrest" administered at the direction of the "arresting

law-enforcement officer") and (g) (speaking to contingency when "arresting officer"

lacks training in administration of secondary chemical test); § 17C-5-7(a) (addressing

appellate review by the circuit court of OAH's decision. The circuit court's order notes
that Mr. Oakland raised other meritorious issues in favor of reversing OAH's order in his
petition for review, which were characterized as "holding water," but the court felt it
unnecessary to address them given that it believed that the reason for reversal stated in its
Order was sufficient standing alone.

14

officer's duties following "arrest" when the person "under arrest" refuses to submit to a secondary chemical test); § 17C-5-8 (noting that blood, breath or urine sample results are admissible if taken within two hours "from and after the time of arrest"); § 17C-5-9 (codifying right of person "lawfully arrested" to demand a chemical test of her or his blood, breath or urine).

However, we find Mr. Oakland's argument misplaced. West Virginia Code § 17C-5A-2(f) (2010), the statute in effect on the date of the incident, makes it clear that the following elements were a mandatory prerequisite to the OAH upholding an order of suspension: (1) that there was a lawful "arrest" of the driver; _or_ (2) that the driver *was lawfully taken into custody for the purpose of administering a secondary test*[.]" (emphasis added).[2] The record before us reveals that Officer Wilhelm stopped Mr.

---

[2] West Virginia Code § 17C-5A-2(f) (2010) provided that,

> (f) In the case of a hearing in which a person is accused of driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, or accused of driving a motor vehicle while having an alcohol concentration in the person's blood of eight hundredths of one percent or more, by weight, or accused of driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight, the Office of Administrative Hearings shall make specific findings as to: (1) Whether the investigating law-enforcement officer had reasonable grounds to believe the person to have been driving while under the influence of alcohol, controlled substances or drugs, or while having an alcohol concentration in the person's blood of eight hundredths of one percent or

(continued . . .)

15

Oakland's vehicle after he observed him roll through a stop sign. Mr. Oakland, who had glassy eyes, then not only admitted to smoking marijuana, but failed two of the three field sobriety tests administered to him. Officer Wilhelm accordingly handcuffed Mr. Oakland, placed him in his police cruiser, and transported him to the hospital for the purpose of administering the blood test.

Mr. Oakland contends that the Moundsville Police Department has designated "breath" as its test of choice, and therefore, Officer Wilhelm, "the law-enforcement officer" "employ[ed]" by that agency, was without authority to require Mr. Oakland to submit to a blood test under threat of suspension of his license by hand-editing the implied consent form, to take him into custody to do so, and that he otherwise lacked any authority to engage in an *ad hoc* modification/designation of Moundsville's

more, by weight, or to have been driving a motor vehicle while under the age of twenty-one years with an alcohol concentration in his or her blood of two hundredths of one percent or more, by weight, but less than eight hundredths of one percent, by weight; (2) whether the person was lawfully placed under arrest for an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test: Provided, That this element shall be waived in cases where no arrest occurred due to driver incapacitation; (3) whether the person committed an offense involving driving under the influence of alcohol, controlled substances or drugs, or was lawfully taken into custody for the purpose of administering a secondary test; and (4) whether the tests, if any, were administered in accordance with the provisions of this article and article five of this chapter.

designated secondary test. Mr. Oakland maintains that because the secondary chemical test Wilhelm required Respondent to take was not a legal one, he cannot have been lawfully been taken into custody for purposes of administering a secondary chemical test within the meaning of W. Va. Code § 17C-5A-2(f). We disagree. There is nothing in our statutory law that prevented Officer Wilhelm from administering a blood test to determine if Mr. Oakland was impaired by marijuana. West Virginia Code § 17C-5-4 (2010) provides that

> (a) Any person who drives a motor vehicle in this state is considered to have given his or her consent by the operation of the motor vehicle to a preliminary breath analysis *and* a secondary chemical test of either his or her blood, breath or urine for the purpose of determining the alcoholic content of his or her blood.

(Emphasis added). Pursuant to West Virginia Code § 17C-5-4, there was implied consent to a secondary chemical test. For all these reasons, we conclude that Mr. Oakland was lawfully taken into custody for purposes of administering a secondary test.

Finally, the results of the blood test were never admitted during the proceedings below. Pursuant to syllabus point 1 of *Albrecht v. State*, 173 W. Va. 268, 314 S.E.2d 859 (1984),

> [t]here are no provisions in either W. Va. Code, 17C-5-1 (1981), *et seq.*, or W. Va. Code, 17C-5A-1 (1981), *et seq.*, that require the administration of a chemical sobriety test in order to prove that a motorist was driving under the influence of alcohol or drugs for purposes of making an administrative revocation of his driver's license.

17

In view of the driving behavior of Mr. Oakland observed by Officer Wilhelm, including the failure by Mr. Oakland to lawfully stop at a stop sign, Officer Wilhelm's other observations, the results of the field sobriety tests, and Mr. Oakland's admitted use of an illicit intoxicating substance, we conclude that the circuit court abused its discretion in reversing the OAH.

## IV.

### CONCLUSION

For the foregoing reasons, we reverse the June 15, 2013, order of the Circuit Court of Marshall County and remand this matter for reinstatement of the Commissioner's order revoking Mr. Oakland's license to operate a motor vehicle.

**Reversed and Remanded.**