IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

**November 9, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No.  14-1059

ERIE INSURANCE PROPERTY & CASUALTY COMPANY
AND WEST VIRGINIA INSURANCE COMMISSIONER,
Respondents Below, Petitioners

v.

VINCENT J. KING,
Petitioner Below, Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable John L. Cummings, Senior Status Judge
Civil Action No. 13-AA-95

REVERSED AND REMANDED

Submitted:  October 14, 2015
Filed: November 9, 2015

Jill Cranston Rice, Esq.
Andrew T. Kirkner, Esq.
Dinsmore & Shohl LLP
Morgantown, West Virginia
and
James D. Lamp, Esq.
Matthew J. Perrry, Esq.
Lamp Bartram Levy Trautwein & Perry, PLLC
Huntington, West Virginia
Attorneys for Erie Insurance Property & Casualty Company

Andrew R. Pauley, Esq.
WV Offices of the Insurance Commissioner
Charleston, West Virginia
Attorney for Insurance Commissioner of West Virginia

Vincent J. King, Esq.
Cross Lanes, West Virginia
Pro Se

Jeffrey M. Wakefield, Esq.
Keith R. Hoover, Esq.
Flaherty Sensabaugh Bonasso PLLC
Charleston, West Virginia
Attorneys for Amicus Curiae, West Virginia Insurance Federation

Amy M. Smith, Esq.
Steptoe & Johnson PLLC
Bridgeport, West Virginia
and
Laurie C. Barbe, Esq.
Steptoe & Johnson PLLC
Morgantown, West Virginia
Attorneys for Amici Curiae, American Insurance Association
        and Property Casualty Insurance Association of America

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va. Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syl. Pt. 1, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

2.      "In cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*." Syl. Pt. 2, *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996).

3.      "Any challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33-20-5(d) (1967) (Repl.Vol.2006) in a proceeding before the Insurance Commissioner." Syl. Pt. 3, *State ex rel. CitiFinancial, Inc. v. Madden,* 223 W.Va. 229, 672 S.E.2d 365 (2008).

4.    "In providing for a cause of action that permits the recovery of excess charges included in a consumer credit transaction pursuant to the provisions of West Virginia Code § 46A-3-109 (1998) (Repl.Vol.2006) and § 46A-5-101 (1996) (Repl.Vol.2006), the Legislature did not authorize the circuit courts to invade the jurisdiction of the Insurance Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner."  Syl. Pt. 2, *State ex rel. CitiFinancial, Inc. v. Madden,* 223 W.Va. 229, 672 S.E.2d 365 (2008).

5.    "By design, insurance rate setting involves the prospective use of proposed rates which are calculated based on cost projections derived from past experience combined with a reasonable expectation of future losses and expenses."  Syl. Pt. 5, *W.Va. Emp'rs' Mut. Ins. Co. v. Bunch Co.*, 231 W.Va. 321, 745 S.E.2d 212 (2013).

6.    "'The "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.'  Syllabus Point 3, *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996)."  Syl. Pt. 5, *Dale v. Oakland*, 234 W.Va. 106, 763 S.E.2d 434 (2014).

LOUGHRY, Justice:

The petitioners, Erie Insurance Property and Casualty Company and the West Virginia Insurance Commissioner ("Erie" and "Commissioner" individually or "petitioners" collectively), appeal a September 12, 2014, order of the Circuit Court of Kanawha County. By that order, the circuit court reversed a July 10, 2013, administrative decision of the Commissioner and overruled the Commissioner's prior approval of a rate, form, and product filing submitted by Erie. In this appeal, the petitioners contend that the circuit court misapplied the law by failing to afford deference to the Commissioner's approval authority with respect to insurance rates and forms, made erroneous findings of fact, and improperly substituted its judgment for that of the Commissioner. Upon consideration of the parties' briefs and arguments,[1] the submitted record, and pertinent authorities, we find the circuit court erred in reversing the decision of the Commissioner. Accordingly, for the reasons set forth below, the circuit court's order is reversed, and this case is remanded for entry of an order reinstating the Commissioner's decision.

---

[1]At this juncture, the Court wishes to acknowledge and express appreciation for the contributions of amici curiae, West Virginia Insurance Federation, American Insurance Association, and Property Casualty Insurance Association of America, who filed briefs in support of the petitioners.

## I. Factual and Procedural Background

In early February 2010, Erie made a 398-page filing with the Commissioner seeking approval for a new product endorsement entitled "Rate Protection Endorsement" ("RPE").[2] Erie indicated that the RPE would provide a guarantee that a policy owner's rate would not change once obtained, if three conditions remained static: the car(s), the driver(s), and the garaging address. In other words, the premium would remain the same even if there were other occurrences that would normally trigger a rate increase. Erie stated that the endorsement could be discontinued at any time and was optional.[3] The price of the endorsement varied by coverage based upon an RPE scoring algorithm. The proposed effective date was June 1, 2010. Upon receipt of the filing, the Commissioner undertook an investigation and review that resulted in several amendments to the filing by Erie.

---

[2]According to Erie, the filing included "letters of explanation, WV PPA Proposed Manual Rate Pages, WV Proposed Manual Rate Pages, Declarations Page, Filing Memorandum, Draft of Marketing Brochure, Draft of Agent Marketing Aid, Important Notice, and WV Filing Fee Form."

[3]The filing included a proposed notice that Erie planned to use to explain the RPE to consumers of the policy and buyers of the endorsement. The notice read, in pertinent part, as follows:

> The Rate Protection Endorsement is designed to smooth out rates over time, and it may initially result in an increase or decrease in your total premium depending on a number of factors. The endorsement gives you a level of predictability and control over your auto insurance premium . . . You may contact your insurance agent at any given time to remove the endorsement and receive the current non-smoothed rate.

Ultimately, the Commissioner approved the Erie filing, as amended, on April 15, 2010, with an effective date of July 1, 2010.

In the spring of 2012, the respondent, Vincent J. King ("Mr. King"), traded his 2009 Chevrolet Malibu for a 2012 model. Before doing so, Mr. King, an Erie insured, contacted his Erie insurance agent at the Garlow Insurance Agency to determine the impact the trade would have on his insurance premium. At that time, Mr. King was advised that the trade would result in less than a $3.00 annual increase. After making the trade, Mr. King notified his agent to substitute vehicles under his Erie policy, stating that he wanted the same coverage on his new car. Thereafter, Mr. King, who was unaware that Erie had obtained approval for its RPE, received his new policy which reflected a different premium that was actually less than the amount he had been quoted when he inquired about the premium prior to making his trade. Mr. King observed that while his total premium had decreased, the liability premium had increased by forty percent. Mr. King contacted his insurance agent and asked for a detailed explanation. According to Mr. King, he was told that the difference in premium was the result of "rate protection." Upon further inquiry, Mr. King received a letter from Erie, dated November 16, 2012, stating, in pertinent part:

> The change in premium between the policy renewal on February 2, 2012 and the amendment effective April 26, 2012 was due to the replacement of the 2009 vehicle with a 2012 vehicle and the addition of the Rate Protection Endorsement. Prior to this time, your policy did not include the Rate Protection Endorsement. With the advent of this Endorsement, which

3

allows Customers to lock their premium until they make a qualifying change, ERIE introduced a different rating plan with a higher degree of pricing sophistication than exists in our traditional rating plan.

The Garlow Agency confirmed that its standard business practice at the time of a qualifying change, such as the replacement of a vehicle, is to offer the Customer the option of adding the Rate Protection Endorsement, which you elected to do. ERIE's private passenger auto rates in West Virginia did not change during this time period, so the premium change you experienced resulted from the change in vehicles and the addition of the Rate Protection Endorsement.

If the replacement of the existing vehicle with the newer vehicle had been the only change, then the premium changes for the individual coverages would have coincided with your expectations. Adding the Rate Protection Endorsement provided you with an additional policy feature, while at the same time reducing the overall premium. Because the rating plan associated with the Endorsement differs from ERIE's traditional rating plan, the price of a policy endorsed with Rate Protection may be higher, or lower, than it would be without the Endorsement. In your case, the resulting changes by coverage were an increase to the liability premium and a decrease in the physical damages premiums, for an overall premium decrease.

Mr. King was certain that he had not been offered the RPE and had not consented to the addition of the RPE to his policy despite Erie's assertion to the contrary. Unsatisfied with Erie's responses to his inquiries, Mr. King sent a letter to Erie on December 5, 2012, requesting a hearing pursuant to West Virginia Code § 33-20-9 (2011).[4] Responding

[4]West Virginia Code § 33-20-9 provides:

4

to Mr. King's request, Erie made Cody Cook, the Vice President and Product Manager of its Personal Lines Division, available for questioning by Mr. King on February 1, 2013. Erie also provided approximately 400 pages of publicly-accessible documents related to Erie's RPE rate filing for Mr. King to review. According to Mr. King, after eliciting testimony from Mr. Cook, he sought to question Phil Garlow, his insurance agent, but Erie stopped the hearing because Mr. Garlow requested time to obtain counsel. While Mr. King believed the hearing was going to continue at a later date, Erie instead filed a Petition for Declaratory Ruling with the Commissioner, seeking a declaratory ruling as to the scope and applicability of the provisions of West Virginia Code § 33-20-9. In response, Mr. King filed an

---

(a) Every rating organization and every insurer which makes its own rates shall, within a reasonable time after receiving written request therefor and upon payment of such reasonable charge as it may make, furnish to any insured affected by a rate made by it, or to the authorized representative of such insured, all pertinent information as to such rate.

(b) Every rating organization and every insurer which makes its own rates shall provide within this State reasonable means whereby any person aggrieved by the application of its rating system may be heard in person or by his authorized representative, on his written request to review the manner in which such rating system has been applied in connection with the insurance afforded him. If the rating organization or insurer fails to grant or reject such request within thirty days after it is made, the applicant may proceed in the same manner as if his application had been rejected. Any party affected by the action of such rating organization or such insurer on such request may, within thirty days after written notice of such action, appeal to the commissioner, who, after notice and hearing, may affirm or reverse such action.

administrative complaint against Erie titled "Petition for Hearing and Issuance of Subpoenas" pursuant to West Virginia Code §§ 33-20-5(d) (2011),[5] 33-2-13 (2011)[6] and 33-2-4 (2011),[7] seeking a hearing before the Commissioner to determine "whether Erie accurately

---

[5]West Virginia Code § 33-20-5(d) provides:

Any person or organization aggrieved with respect to any filing which is in effect may demand a hearing thereon. If, after such hearing, the commissioner finds that the filing does not meet the requirements of this article, he shall issue an order specifying in what respects he finds that such filing fails to meet the requirements of this article, and stating when, within a reasonable period thereafter, such filing shall be deemed no longer effective. Said order shall not affect any contract or policy made or issued prior to the expiration of the period set forth in said order.

[6]West Virginia Code § 33-2-13 provides, in pertinent part:

The commissioner may call and hold hearings for any purpose deemed necessary by him for the performance of his duties. He shall hold hearings when required by the provisions of this chapter or upon a written demand therefor by a person aggrieved by any act or failure to act by the commissioner or by any rule, regulation or order of the commissioner.

[7]West Virginia Code § 33-2-4 provides, in relevant part:

(a) For the purpose of any investigation or proceeding under this chapter, the commissioner or any officer designated by him or her may administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence and require the production of any books, papers, correspondences, memoranda, agreements or other documents or records which the commissioner considers relevant or material to the inquiry. The commissioner's authority to subpoena witnesses and documents outside the state shall exist to the maximum extent permissible under federal constitutional law.

represented the risk with respect to its Rate Protection Endorsement and corresponding Rate and Rule Manual pages, and whether prior approvals thereof should now be withdrawn."

Concluding that a hearing would serve no useful purpose, the Commissioner issued a twenty-page order on July 10, 2013, addressing both Erie's request for a declaratory ruling and Mr. King's administrative complaint. Denying Mr. King relief, the order contained detailed findings of fact and conclusions of law, declaring that upon re-review, the Commissioner's prior approval of Erie's RPE was "in proper accordance with West Virginia law."

Following the issuance of the Commissioner's order, Mr. King filed an appeal in the Circuit Court of Kanawha County pursuant to the State Administrative Procedures Act ("APA"),[8] asserting, inter alia, that the Commissioner was statutorily required to withdraw the prior approval of Erie's RPE and that the Commissioner was clearly wrong with respect to certain findings of fact.[9] The circuit court heard oral arguments on the matter on August

---

[8]West Virginia Code § 29A-5-4(a) (2015) provides, in pertinent part: "Any party adversely affected by a final order or decision in a contested case is entitled to judicial review thereof under this chapter, but nothing in this chapter shall be deemed to prevent other means of review, redress or relief provided by law."

[9]Mr. King did not appeal the denial of his request for a hearing before the Commissioner.

7

1, 2014. Thereafter, on September 12, 2014, the circuit court issued its final order reversing

the Commissioner's decision. The order provides in relevant part:

> Ordinarily, the undersigned would be inclined to remand this matter for further proceedings at the administrative level but, at oral argument, counsel for the Commissioner made clear that the Commissioner's overriding concern is the perceived ramifications of a private citizen challenging the acts of an insurer, more so than the merits of any such challenge. Remand, therefore, would be an exercise in futility and [Mr. King] would simply refile his appeal here. Accordingly, this Court having reviewed the same evidence, and having found that Erie's RPE violates Chapter 33; contains misleading clauses; that the title itself is misleading; that it is being solicited by deceptive marketing; that its benefits are unreasonable in relation to the premium charged; and is not in the public's interest, but the Commissioner having failed to withdraw approval as he was statutorily required to do, the Order appealed from is hereby **REVERSED** and continued approval of the RPE is **OVERRULED**. The Court leaves to the discretion of the Commissioner an orderly process by which policies currently subject to RPE are otherwise renewed and converted to traditional rating also previously approved. Alternatively, nothing herein precludes Erie from again seeking approval, with proper fiscal disclosure, deletion of misleading clauses and title, neutral rating, proper consumer advertising and agent training, all as the Commissioner in full compliance with West Virginia law might allow, on a strictly voluntary basis by the consumer.

Upon entry of the circuit court's order, this appeal followed.[10]

---

[10]By agreement of the parties, the circuit court's order was stayed pending this appeal.

8

## II.  Standard of Review

This is an administrative appeal and our review is governed by the same statutory standard that applied to the circuit court's consideration of this matter.  As we explained in syllabus point one of *Muscatell v. Cline*, 196 W.Va. 588, 474 S.E.2d 518 (1996):

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W.Va.Code § 29A-5-4(a) and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

We further advised in *Muscatell* that

> [i]n cases where the circuit court has amended the result before the administrative agency, this Court reviews the final order of the circuit court and the ultimate disposition by it of an administrative law case under an abuse of discretion standard and reviews questions of law *de novo*.

*Id.* at 590, 474 S.E.2d at 520, syl. pt. 2.  With these standards in mind, we determine whether the circuit court erred in reversing the decision of the Commissioner and overruling the prior approval of Erie's RPE.

## III.  Discussion

The primary focus of the arguments in this appeal concerns whether the circuit court engaged in an improper re-examination of Erie's rate and form policy filing for its RPE that was approved by the Commissioner in 2010.  In that regard, the petitioners contend the

9

circuit court erroneously conducted a de novo review of the prior approval of the RPE and unequivocally substituted its own judgment for that of the Commissioner contrary to this Court's decisions in *State ex rel. CitiFinancial, Inc. v. Madden,* 223 W.Va. 229, 672 S.E.2d 365 (2008) (*"CitiFinancial I"*); *West Virginia Employers' Mutual Insurance Co. v. Bunch Co.*, 231 W.Va. 321, 745 S.E.2d 212 (2013) (*"Bunch"*); and *Lightner v. Riley*, 233 W.Va. 573, 760 S.E.2d 142 (2014) (*"CitiFinancial II"*). By not affording deference to the Commissioner's decision concerning the validity of the RPE as required by this trilogy of cases, the petitioners assert that the circuit court misapplied the standard of review for administrative appeals set forth in West Virginia Code § 29A-5-4(g).[11] In addition, the petitioners argue that the circuit court's decision is clearly wrong because the findings of fact contained therein are contrary to the evidence set forth in the record. By making erroneous

---

[11]West Virginia Code § 29A-5-4(g) provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision or order are:
> (1) In violation of constitutional or statutory provisions; or
> (2) In excess of the statutory authority or jurisdiction of the agency; or
> (3) Made upon unlawful procedures; or
> (4) Affected by other error of law; or
> (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

findings of fact and failing to afford deference to the Commissioner's decision, the petitioners submit that the circuit court has invaded the Commissioner's rate making authority thereby violating the separation of powers doctrine set forth in our State Constitution. The end result according to the petitioners is an obfuscation of the different roles of the Commissioner and the judiciary that will have the effect of destabilizing the regulation of insurance in West Virginia.[12]

Maintaining this case does not implicate the Commissioner's rate making authority, Mr. King argues that the circuit court applied the appropriate standard of review, correctly finding that several of the Commissioner's findings of fact were clearly wrong and that the Commissioner encroached upon judicial functions in reaching several of his conclusions of law. Mr. King further contends the circuit court did not err in determining that this Court's decisions in *CitiFinancial I, Bunch,* and *CitiFinancial II* were not relevant to this matter. In that regard, he states that this case is distinguishable from *CitiFinancial I* because it is an administrative appeal as opposed to a collateral civil action. He claims that

---

[12]The Commissioner, separate and apart from Erie, argues that the circuit court's decision must be reversed because Mr. King is not an "aggrieved party" due to the fact that application of the RPE to his policy resulted in a decrease of his total premium. The Commissioner maintains that absent the status of an "aggrieved party," Mr. King had no basis to request a hearing and review of the RPE under West Virginia Code § 33-2-13. Upon review of the record, we find that we need not address this issue because the proceedings before the Commissioner were initiated by Erie upon the filing of its petition for a declaratory ruling concerning the scope of West Virginia Code § 33-20-9.

11

*Bunch* and *CitiFinancial II* are distinguishable because those decisions focused upon whether there was a failure to exhaust administrative remedies due to the Commissioner's refusal to hold a hearing. Mr. King points out that he did not appeal the Commissioner's decision because he was denied a hearing but rather simply asserted there was no basis in the record for certain findings of fact and conclusions of law rendered by the Commissioner. In sum, Mr. King argues that the circuit court's decision to reverse the Commissioner's order was based on the record and application of the appropriate standard of review under the APA.

Despite Mr. King's claim that this case is "limited to the failure to withdraw approval of the Rate Protection Endorsement, not the rates applicable thereto," the record in this case shows that from the outset, he has maintained that "the benefits of the RPE are unreasonable in relation to the premium charged." In fact, it was the resulting forty percent increase in Mr. King's liability premium through the addition of the RPE to his insurance policy that caused him to first inquire about the changes thereto. Thus, Mr. King's assertion that this case does not involve rate making rings hollow. Clearly, this is an administrative appeal of a rate and form filing approval. As such, the circuit court committed clear error by refusing to apply the holdings in this court's trilogy of cases setting forth the parameters of judicial involvement when matters of insurance rate making are at issue. A review of those cases illustrates not only the relevance of that precedent but how the circuit court's rulings in this matter are in direct conflict with those decisions.

In *CitiFinancial I*, this Court was required to determine whether an individual, Paul W. Lightner, could challenge the reasonableness of an amount charged for credit insurance in connection with certain loans through a civil action. The lender, CitiFinancial, initiated the civil action when Mr. Lighter defaulted on another loan. CitiFinancial sought a writ of prohibition from this Court arguing, inter alia, that whether a charge for insurance is unreasonable or excessive is a decision for the Commissioner and, therefore, the circuit court should be prohibited from allowing Mr. Lighter to pursue the matter in the underlying civil action. Upon examination of the West Virginia Consumer Credit Protection Act and the relevant insurance statutes, this Court concluded that the Commissioner's authority over matters involving insurance rate making and insurance-related forms was unquestionable. Accordingly, we held that "[a]ny challenge to an approved insurance rate by an aggrieved person or organization should be raised pursuant to the provisions of West Virginia Code § 33-20-5(d) (1967) (Repl.Vol.2006) in a proceeding before the Insurance Commissioner." *CitiFinancial I,* 223 W.Va. at 231, 672 S.E.2d at 367, syl. pt. 3. In so holding, we explained that

> factual evidence on issues such as loss ratios and rates of return is required to disprove the reasonableness of an established insurance rate. These issues, due to their highly specialized nature, are typically reserved to the Commissioner's bailiwick. *See* W.Va.Code §§ 33-20-3; 33-20-4, 33-6-30(b). It stands to reason that if a circuit court is allowed to invade this administrative arena and reexamine the issue of whether a given insurance rate is reasonable or excessive, the judiciary will necessarily be substituting its determinations as to permissible insurance rates for those previously determined by the

13

Commissioner and supplanting its opinion in matters expressly delegated to the Commissioner's expertise and jurisdiction. A further peril that cannot be overlooked is that judicial intervention in the rate making area would open the door to conflicting decisions amongst the various circuits regarding what constitutes an unreasonable or excessive charge for credit insurance. In this manner then, the uniformity of regulation that the Legislature has established by delegating all matters involving rate making and rate filings to the Commissioner is certain to be infringed if circuit courts or jurors are permitted to second guess the reasonableness of rates previously approved by the Commissioner.

223 W.Va. at 237, 672 S.E.2d at 373. We also observed that in 2002, the Legislature amended West Virginia Code § 33-6-30 adding a presumption of statutory compliance for policy forms and rates approved by the Commissioner.[13] We determined that

the inclusion of the statutory language that creates a presumption of compliance occurred as part of the Legislature's attempt to strengthen the rate making powers of the Commissioner. *See* W.Va.Code § 33-6-30(b), (c) (2002 amends). Through its adoption of this statutory language, the Legislature established a procedural mechanism by which insurance rates are presumed to be in compliance with all regulatory requirements upon their approval by the Commissioner. While approved insurance rates are still subject to challenge, the burden for disproving the validity of such rates is placed on the entity who seeks to set the rates aside.

223 W.Va. at 239, 672 S.E.2d at 375. Accordingly, we concluded that

---

[13]West Virginia Code § 33-6-30(c) (2011) provides, in pertinent part: "Where any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full compliance with the requirements of this chapter."

14

[i]n providing for a cause of action that permits the recovery of excess charges included in a consumer credit transaction pursuant to the provisions of West Virginia Code § 46A-3-109 (1998) (Repl.Vol.2006) and § 46A-5-101 (1996) (Repl.Vol.2006), the Legislature did not authorize the circuit courts to invade the jurisdiction of the Insurance Commissioner and conduct a reexamination of insurance rates previously approved by the Commissioner.

223 W.Va. at 231, 672 S.E2d. at 367, syl. pt. 2.

We, of course, recognized in *CitiFinancial I* that "[a]ny ruling issued by the Commissioner on the issue of the reasonableness of insurance rates or compliance with statutory provisions is a final order that is subject to the provisions of the Administrative Procedures Act ('APA')." *Id.* at 239, 672 S.E.2d at 375. In other words, "judicial review of a determination by the Commissioner on the issue of whether insurance rates are reasonable and in compliance with statutory requirements does exist." *Id.* We proceeded to set forth the parameters of that judical review in *Bunch*. 231 W.Va. 321, 745 S.E.2d 212.

In *Bunch*, the petitioners, the West Virginia Employer's Mutual Insurance Company doing business as BrickStreet Mutual Insurance Company ("BrickStreet") and the Commissioner, appealed a decision of the Circuit Court of Kanawha County that reversed and vacated an administrative order of the Commissioner upholding previously approved workers' compensation insurance policy rates. Specifically at issue was the expense of an agent commission that was included in the worker's compensation premium BrickStreet was

15

charging to the Bunch Company ("Bunch") and other similarly situated insureds. Complying with the dictates of *CitiFinancial I*, Bunch filed a consumer complaint with the Commissioner alleging that BrickStreet was "unlawfully charging an agent commission for its 'direct write' business." *Id.* at 325, 745 S.E.2d at 216. Denying Bunch relief, the Commissioner's administrative order provided:

> 5. The Insurance Commissioner finds there is no factual dispute concerning the filing and approval of the rates and forms of BrickStreet . . . and as a matter of law the rate filings and BrickStreet's use of the same should be upheld.
>
> 6. The Insurance Commissioner finds that the rates charged by BrickStreet were reasonable in relation to the benefits provided due to the fact that certain administrative costs and/or expenses are incurred by BrickStreet in handling direct written business which would otherwise be handled by appointed agents.

*Id.* The Commissioner also found that Bunch had not provided any information to rebut the presumption of statutory compliance that attaches to insurance rates pursuant to West Virginia Code § 33-6-30(c). 231 W.Va. at 325, 745 S.E.2d at 216.

Bunch appealed the decision, and the circuit court reversed and vacated the Commissioner's order. The circuit court ruled that "the Commissioner erred by allowing BrickStreet to charge Bunch a commission when no correlative expense had been incurred" and that "the Commissioner erred in finding the subject insurance rates were reasonable." *Id.* at 325-26, 745 S.E.2d at 216-17. Upon review, we agreed with the petitioners' assertion

16

that the circuit court had "engaged in a rexamination of approved insurance rates and wrongly supplanted its opinion for that of the Commissioner in area that has been expressly delegated to the Commissioner's expertise." *Id.* at 328, 745 S.E.2d at 219. We noted,

> Judge Kaufman, during the hearing on this matter, was quick to recognize two fundamental concerns presented by this case: encroachment on the regulatory rate making process and separation of powers. Notwithstanding the trial court's appreciation of these issues, it proceeded to breach established precepts pertaining to both of those juridical areas. Specifically failing to heed this Court's recognition in *State ex rel. Crist v. Cline*, 219 W.Va. 202, 632 S.E.2d 358 (2006), "that we . . . give deference to [the Insurance Commissioner's] interpretation, so long as it is consistent with the plain meaning of the governing statute," the trial court substituted its judgment for that of the Commissioner on a matter that clearly fell within the rate making area of the Commissioner's expertise. *Id.* at 211, 632 S.E.2d at 367. As we recognized in *Appalachian Power Co. v. State Tax Dep't,* 195 W.Va. 573, 466 S.E.2d 424 (1995), "[a]n inquiring court–even a court empowered to conduct *de novo* review–must examine a regulatory interpretation of a statute by standards that include appropriate deference to agency expertise and discretion." *Id*. at 582, 466 S.E.2d at 433. Ignoring the deference that the Commissioner was entitled to in connection with the interpretation of its own regulation, the trial court encroached upon a matter that has been expressly delegated to the executive branch of our state government. *See Citifinancial*, 223 W.Va. at 237, 672 S.E.2d at 373. In doing so, the trial court neglected to regard this Court's admonition in *Citifinancial* that "the uniformity of regulation that the Legislature has established by delegating all matters involving rate making and rate filings to the Commissioner is certain to be infringed if circuit courts or jurors are permitted to second guess the reasonableness of rates previously approved by the Commissioner." *Id.*

231 W.Va. at 331-32, 745 S.E.2d at 222-23 (footnote omitted).

Less than a year after *Bunch* was decided, Mr. Lightner and CitiFinancial returned to this Court along with Triton Insurance Company, the entity that issued the credit insurance policies sold to Mr. Lightner by CitiFinancial. Pursuant to the decision of this Court in *CitiFinancial I*, Mr. Lightner had filed a consumer complaint with the Commissioner challenging the rates for the credit insurance he had purchased and seeking to have the Commissioner withdraw approval for the rate filings of Triton over a period of fourteen years. 233 W.Va. at 576, 760 S.E.2d at 145. Upon receipt of Mr. Lightner's consumer complaint, the Commissioner undertook an extensive investigation of his allegations, as well as all of Triton's rate filings in West Virginia. *Id.* at 577, 760 S.E.2d at 146. At the conclusion of the investigation, the Commissioner issued a decision concluding

> (1) that Triton did comply with W.Va. Code § 33-20-3 (2006) in its filings and that Triton's rate filings did not violate W.Va. Code § 33-20-3; (2) that there is "no factual dispute as concerning the filing and approval of the rates and forms of Triton Insurance Company" and that the rates charged by Triton were reasonable in relation to the benefits provided; and (3) that a hearing upon the administrative complaint would serve no useful purpose and, therefore, the request for a hearing was denied.

233 W.Va. at 578, 760 S.E.2d at 147 (footnote omitted).

Mr. Lighter appealed the decision to the circuit court, which upheld the Commissioner's rulings. He then sought relief from this Court. While Mr. Lightner's primary assignment of error in *CitiFinancial II* concerned the Commissioner's refusal to

18

conduct a hearing on his complaint, he also challenged the circuit court's decision to uphold the Commissioner's finding that the insurance charges were not excessive and were reasonable in relation to the benefits provided. *Id.* at 579, 760 S.E.2d at 148. Mr. Lightner maintained that the Commissioner had offered no data or evidence to support his conclusion that the lenders rates were reasonable in relation to the benefits provided and that the circuit court's order added nothing to the Commissioner's findings. *Id.* Noting that our review was controlled by the provisions of West Virginia Code § 29A-5-4(g),[14] we found that "the Commissioner performed due diligence and questioned the rate filings, but he received adequate documentation and explanation from Triton prior to approving the rates from 1994 though 2003." 233 W.Va. at 582, 760 S.E.2d at 151. Accordingly, we affirmed the finding that the rates charged for the credit insurance were reasonable. *Id.*

As in *CitiFinancial II,* before rendering a decision in this matter, the Commissioner undertook another review of Erie's rate and form filing for the RPE. Finding the prior approval to be proper and in accordance with West Virginia law, the Commissioner concluded:

> 4. Pursuant to W.Va. Code § 33-6-30(c) (2002), "[w]here any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full

---

[14]*CitiFinancial II*, 233 W.Va. at 578, 760 S.E.2d at 147.

compliance with the requirements of this chapter," the Insurance Commissioner finds that the rates, forms and/or products were approved by the Insurance Commissioner and, therefore, presumed to be in compliance with Chapter 33 of the W.Va. Code. Further, the Commissioner has been provided with no information that would in fact rebut such a presumption despite the voluminous filings and argument of [Mr. King].

5. The Insurance Commissioner finds there is no factual dispute concerning the filing and approval of the rates, forms and/or products of Erie as referenced herein this Order and the subject of [Mr. King's] administrative complaint and as a matter of law the rate, form and/or product filings and Erie's use of the same should be upheld.

. . . .

9. The Insurance Commissioner finds that the rates charged by Erie were reasonable in relation to the premium charged in that the benefits provided and the fact that the filing took into account the ramifications and usage of the optional endorsement known as the Rate Protection Endorsement and that sufficient and adequate if not substantial benefits are provided to policyholders who have purchased this product and stay within the confines of the program.

. . . .

15. The Insurance Commissioner finds and concludes that there are no violations of the West Virginia Code in regard to the Erie RPE filing and its implementation of the same to this policyholder, [Mr.] King.

16. The Insurance Commissioner finds and concludes that the filing does not contain or incorporate by reference any inconsistent, ambiguous or misleading clauses, or exceptions and conditions which deceptively affect the risk to be assumed in the general coverage contract.

17. The Insurance Commissioner finds and concludes that there are no other provisions of the filing that are misleading or were misleading in how it was implemented to this policyholder, [Mr.] King.

18. The Insurance Commissioner finds and concludes that the policies sold to [Mr.] King were not procured through deceptive advertising.

19. The Insurance Commissioner finds and concludes that the benefits of the RPE and the filing are reasonable in relation to the premium charged.

20. The Insurance Commissioner finds and concludes that the coverage provided therein the filing by Erie concerning the RPE product was sufficiently broad to be in the public interest.

In reversing the Commissioner's decision, the circuit court's order reflects that no deference was accorded to the Commissioner's determination as to the validity of Erie's rate and form filing for its RPE as required by West Virginia Code § 33-6-30(c) and our decisions in *CitiFinancial I, Bunch,* and *CitiFinancial II.* Failing to mention the presumption of statutory compliance embedded in West Virginia Code § 33-6-30(c) and dismissing the trilogy of cases in a summary fashion, the circuit court proceeded by express admission to "conduct[] its own research and analysis." The end result was a reversal of the Commissioner's decision based upon misapplication of the law, a complete disregard of the record, and an improper substitution of the circuit court's opinion.

21

Despite our admonition in *Bunch* that a court may not reexamine matters that clearly fall within the Commissioner's rate making authority and substitute its judgment for that of the Commissioner, the trial court proceeded to do that very thing in this case by concluding that the benefits of the RPE are "unreasonable in relation to the premium charged." Relegating its finding in this regard to a footnote, the circuit court discredited the Commissioner's determination on this issue on the basis that the

> RPE resulted in a 40% increase in [Mr. King's] personal liability rate . . . RPE has resulted in a net gain to ERIE . . . . The Court has not found any cost-benefit analysis or any other entry in the Record to support the Commissioner's finding that the benefits provided by the RPE are reasonable in relation to the increased liability premium.

The circuit court's conclusion that the benefits of the RPE are unreasonable in relation to the premium charged overlooked the fact that Mr. King's overall premium actually decreased by the addition of the RPE to his policy. More importantly, the circuit court failed to recognize that when Erie sought approval for its RPE, the Commissioner made the decision based on 398 pages of documentation, which included experience data and projections that Erie had available to it at that time. In *Bunch*, we explained that "[b]y design, insurance rate setting involves the prospective use of proposed rates which are calculated based on cost projections derived from past experience combined with a reasonable expectation of future losses and expenses." 231 S.E.2d at 323, 745 S.E.2d at 214, syl. pt. 5. Rather than acknowledging the highly complex nature of insurance rate setting and

22

this Court's recognition that the Legislature has made clear that "rate making [is] not a matter intended for the courts,"[15] the circuit court second guessed the reasonableness of the rates previously approved by the Commissioner.

In addition to erroneously injecting itself into a rate making matter, the circuit court made findings of fact that were contrary to overwhelming evidence in the record below. In particular, the circuit court found that the RPE violates Chapter 33; is misleading based on its title and clauses contained within; is being solicited by deceptive marketing practices; and is not in the public's interest. The circuit court made these findings by relying, in part, upon portions of Mr. Cook's testimony elicited by Mr. King that were clearly taken out of context or simply misunderstood. Contrary to the circuit court, the Commissioner found the RPE was not ambiguous, unclear, or in any way misleading nor was the product deceptively marketed. The Commissioner pointed out in his decision that Mr. King was given the ability to remove the RPE from his policy on more than one occasion, yet he declined to so. Further, the evidence indicated that Mr. King had been provided the "Important Notice" issued by Erie that detailed the implementation of the product. This Court has held that "'[t]he "clearly wrong" and the "arbitrary and capricious" standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis.' Syllabus Point 3, *In re Queen*, 196 W.Va. 442, 473 S.E.2d

---

[15]*Bunch*, 231 W.Va. at 331, 745 S.E.2d at 222.

483 (1996)." Syl. Pt. 5, *Dale v. Oakland*, 234 W.Va. 106, 763 S.E.2d 434 (2014). In this instance, the Commissioner's decision was clearly supported by substantial evidence, and the circuit court abused its discretion in substituting its judgment.

Through the trilogy of cases discussed above, this Court has clearly prescribed the role of a reviewing court tasked with an administrative appeal of a matter that implicates the rate making authority of the Commissioner. Further, the Legislature had mandated by express statutory directive that "[w]here any insurance policy form, including any endorsement thereto, has been approved by the commissioner, and the corresponding rate has been approved by the commissioner, there is a presumption that the policy forms and rate structure are in full compliance with the requirements of this chapter." W.Va. Code § 33-6-30(c). In addition, we have made clear that under the APA, a reviewing court must accord deference to the findings of fact made by an administrative agency unless that court believes the findings to be clearly wrong. *Muscatell*, 196 W.Va. at 590, 588 S.E.2d at 520, syl. pt. 1. That deference presumes that the agency's actions are valid if the decision is supported by substantial evidence. *Dale*, 234 W.Va. at 107, 763 S.E.2d at 435, syl. pt. 5. In this instance, the circuit court acted independent of these established precepts and substituted its judgment for that of the Commissioner.

24

## IV. Conclusion

Accordingly, based on the foregoing, we reverse the September 12, 2014, order of the Circuit Court of Kanawha County and remand this case for entry of an order reinstating the July 10, 2013, decision of the Commissioner.

Reversed and remanded.

25