IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

No. 21-0371
_____

FILED

**June 15, 2023**
released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

CLINT CASTO,
Petitioner Below, Petitioner,

V.

EVERETT FRAZIER, COMMISSIONER,
WEST VIRGINIA
DIVISION OF MOTOR VEHICLES,
Respondent Below, Respondent.

_____

Appeal from the Circuit Court of Kanawha County
The Honorable Maryclaire Akers, Judge
Civil Action No. 20-AA-86

REVERSED AND REMANDED

_____


Submitted: April 18, 2023
Filed: June 15, 2023

Jeremy B. Cooper, Esq.
Blackwater Law PLLC
Aspinwall, Pennsylvania
Attorney for Petitioner

Patrick Morrisey, Esq.
Attorney General
Elaine L. Skorich, Esq.
Assistant Attorney General
Janet E. James, Esq.
Assistant Attorney General
Charleston, West Virginia
Attorneys for Respondent


JUSTICE BUNN delivered the Opinion of the Court.

JUSTICE ARMSTEAD concurs, in part, and dissents, in part, and reserves the right to file a separate opinion.

**SYLLABUS BY THE COURT**

1.      "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syllabus point 2, *Shepherdstown Volunteer Fire Department v. State ex rel. West Virginia Human Rights Commission*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

2.      "On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo*; findings of fact by the administrative officer are accorded deference unless the reviewing court believes the findings to be clearly wrong." Syllabus point 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996).

3.     "Some of the rules of statutory construction that we have utilized are: Effect should be given to the spirit, purpose and intent of the lawmakers without limiting the interpretation in such a manner as to defeat the underlying purpose of the statute. Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syllabus point 6, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984).

4.     A person is "under the influence" if the person (1) consumed, used, took, or ingested alcohol, controlled substances, or drugs and (2) the alcohol, controlled substances, drugs, or any combination thereof impaired the person's ability to operate a motor vehicle with ordinary care.

BUNN, Justice:

Petitioner Clint Casto appeals from an order entered April 9, 2021, by the Circuit Court of Kanawha County that affirmed an order entered by the Office of Administrative Hearings ("OAH"). The OAH's order upheld the administrative revocation of Mr. Casto's driver's license for driving under the influence of controlled substances or drugs. On appeal to this Court, Mr. Casto argues that the evidence is not sufficient to support a finding that he was driving under the influence. Respondent, Everett Frazier,[1] Commissioner of the West Virginia Division of Motor Vehicles ("DMV"), contends that Mr. Casto's license revocation was proper.

We conclude that the evidence in this case is not sufficient to support Mr. Casto's license revocation. Therefore, we reverse the circuit court's April 9, 2021 order affirming the OAH's order that upheld the revocation and remand this case for an order rescinding the DMV's revocation order and reinstating Mr. Casto's driver's license.

---

[1] During the pendency of this case, the DMV Commissioner has changed; thus, "the necessary substitution of parties [has been made] pursuant to Rule 41(c) of the West Virginia Rules of Appellate Procedure." *Frazier v. Braley*, No. 20-0726, 2022 WL 633848, at *1 n.1 (W. Va. Mar. 4, 2022) (memorandum decision).

# I.

## FACTUAL AND PROCEDURAL HISTORY

At approximately 3:00 a.m. on April 13, 2019, Patrolman R.C. Montagu of the Charleston Police Department observed Mr. Casto parking diagonally across multiple spaces in a convenience store parking lot. Patrolman Montagu reported that Mr. Casto appeared unsteady upon exiting his vehicle, left the vehicle running while he went into the store, looked around, and exited the store without making a purchase. When Mr. Casto left the store, Patrolman Montagu approached him and began an investigation to determine whether Mr. Casto had been driving under the influence of alcohol, controlled substances, and/or drugs. Mr. Casto denied having ingested any of these substances, and his preliminary breath test at the scene showed no presence of alcohol in his system. Patrolman Montagu noted that Mr. Casto had bloodshot eyes and administered three field sobriety tests. There was no evidence of impairment from the horizontal gaze nystagmus test, but Mr. Casto performed the one-leg stand test improperly and incorrectly estimated twenty-five seconds to be thirty seconds, and he also had difficulties with the walk-and-turn test.

Patrolman Montagu, who had been trained to detect drug use, administered two additional field tests and reported that Mr. Casto's performance on these tests "indicated a high probability of impairment." Patrolman Montagu's report regarding his encounter with Mr. Casto does not state whether he found any evidence of drug use or consumption on Mr. Casto or in his vehicle. Patrolman Montagu placed Mr. Casto under arrest for driving under the influence, then asked him if he would submit to a blood test, as

the secondary chemical test. Mr. Casto agreed to submit to a blood test and also asked for a blood test himself. Mr. Casto's blood sample was taken shortly after his arrest, and the West Virginia State Police Forensic Laboratory analyzed it. Mr. Casto's blood sample was subjected to a ninety-panel screen, and it was negative for all tested substances.

Despite the negative blood test, the DMV administratively revoked Mr. Casto's driver's license for driving under the influence of controlled substances or drugs based upon the results of the field sobriety tests and Patrolman Montagu's observations during the traffic stop. Mr. Casto appealed to the OAH. During the hearing before the OAH, Mr. Casto testified that on the night of his arrest, he had just finished working his second job of the day,[2] that he had a right leg injury that might have affected his performance on the field sobriety tests, and that he was wearing "steel toed tennis shoes" that might have also affected his performance on the tests. The record is unclear as to whether Mr. Casto told Patrolman Montagu about these purported issues on the night of the arrest. The OAH upheld the DMV's revocation. Mr. Casto then appealed to the Circuit Court of Kanawha County, which also upheld his license revocation by order entered April 9, 2021. Mr. Casto now appeals to this Court.

---

[2] Mr. Casto worked for a ticket vendor during the day and drove for a passenger transportation service in the evening hours.

## II.

## STANDARD OF REVIEW

This appeal is before the Court upon Mr. Casto's unsuccessful appeals to the OAH and the circuit court. As an administrative appeal, the West Virginia Administrative Procedures Act governs the scope of judicial review by the circuit court and this Court. *See generally* W. Va. Code § 29A-5-4. Regarding the nature of the circuit court's review, we have held that,

> [u]pon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: "(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

Syl. pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. W. Va. Hum. Rts. Comm'n,* 172 W. Va. 627, 309 S.E.2d 342 (1983). This same standard also applies to this Court's review:

> On appeal of an administrative order from a circuit court, this Court is bound by the statutory standards contained in W. Va. Code § 29A-5-4[(g)] and reviews questions of law presented *de novo;* findings of fact by the administrative

officer are accorded deference unless the reviewing court believes the findings to be clearly wrong.

Syl. pt. 1, *Muscatell v. Cline*, 196 W. Va. 588, 474 S.E.2d 518 (1996). Finally, to the extent we must review the circuit court's construction and application of the governing statutes, we review those determinations de novo. *See* Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W. Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review.").

## III.

## DISCUSSION

Mr. Casto assigns two errors on appeal to this Court: (1) the circuit court erred by upholding his license revocation because there was insufficient evidence to prove by a preponderance of the evidence that he had ingested alcohol, drugs, and/or controlled substances and (2) his revocation order should be vacated because this case is still pending after the OAH's dissolution.[3] The DMV responds that neither of these assigned errors warrants reversal of the circuit court's order. We disagree.

Whether the DMV properly revoked Mr. Casto's driver's license for driving under the influence of alcohol, controlled substances, or drugs is governed by statute and

---

[3] Because our resolution of Mr. Casto's first assignment of error is dispositive, it is not necessary for us to address the second.

guided by our rules of statutory construction. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975). We have summarized several other principles that govern our consideration of statutes as follows:

> Some of the rules of statutory construction that we have utilized are: Effect should be given to the spirit, purpose and intent of the lawmakers without limiting the interpretation in such a manner as to defeat the underlying purpose of the statute. Each word of a statute should be given some effect and a statute must be construed in accordance with the import of its language. Undefined words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning.

Syl. pt. 6, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984). Moreover, "[i]t is always presumed that the legislature will not enact a meaningless or useless statute." Syl. pt. 4, *State ex rel Hardesty v. Aracoma-Chief Logan No. 4523, Veterans of Foreign Wars of the U.S., Inc.,* 147 W. Va. 645, 129 S.E.2d 921 (1963). Therefore, "[a] cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syl. pt. 3, *Meadows v. Wal-Mart Stores, Inc.,* 207 W. Va. 203, 530 S.E.2d 676 (1999).

Pursuant to the statute that was in effect at the time of Mr. Casto's license revocation, the DMV could administratively revoke a driver's license if he drove under conditions that would have constituted the crime of driving under the influence of alcohol, controlled substances, or drugs:

6

If, upon examination of the written statement of the officer and the tests [sic] results described in subsection (b) of this section, the commissioner determines that a person committed an offense described in section two [§ 17C-5-2], article five of this chapter . . . and that the results of any secondary test or tests indicate that at the time the test or tests were administered the person had, in his or her blood, an alcohol concentration of eight hundredths of one percent or more, by weight, *or at the time the person committed the offense he or she was under the influence of alcohol, controlled substances or drugs*, the commissioner shall make and enter an order revoking or suspending the person's license to operate a motor vehicle in this State.

W. Va. Code § 17C-5A-1(c) (eff. 2008) (emphasis added).[4] The criminal statute that was in effect at the time of the events at issue in this case and that prohibited Mr. Casto's alleged misconduct provides that

[a]ny person who drives a vehicle in this state: (i) *while he or she is in an impaired state* or (ii) while he or she is in an impaired state but has an alcohol concentration in his or her blood of less than fifteen hundredths of one percent by weight, is guilty of a misdemeanor[.]

W. Va. Code § 17C-5-2(e) (eff. 2016) (emphasis added).[5]

---

[4] The recent statutory amendments to the driver's license revocation procedure now require a court order finding that a driver has violated specified driving laws or a driver's conviction of driving under the influence to support a driver's license revocation by the DMV. *See generally* W. Va. Code § 17C-5A-1a (eff. 2020).

[5] The Legislature has also twice amended this statute, but the specific language applicable to our decision of this case has not changed. *See* W. Va. Code § 17C-5-2(e) (eff. 2020); W. Va. Code § 17C-5-2(e) (eff. 2023).

In denying Mr. Casto's appeals below, both the OAH and the DMV determined that because Mr. Casto had driven under the influence of controlled substances or drugs, his license revocation was proper. *See* W. Va. Code § 17C-5A-1(c). Two questions must be answered to determine if Mr. Casto's driver's license revocation should be upheld: (1) was Mr. Casto driving and (2) if Mr. Casto was driving, was he under the influence of controlled substances or drugs while he was driving. *See id.*

To answer the first query, the parties do not dispute that Mr. Casto operated a motor vehicle shortly before Patrolman Montagu began his investigation. The record demonstrates that Patrolman Montagu saw Mr. Casto drive into the convenience store lot and park, and Mr. Casto admitted that he drove following the end of his second work shift of the day.

However, the parties disagree on the answer to the second inquiry: whether Mr. Casto was under the influence of controlled substances or drugs while driving. The criminal statute that forms the basis for Mr. Casto's administrative license revocation requires that the individual "drives a vehicle in this [S]tate . . . while he or she is in an impaired state." W. Va. Code § 17C-5-2(e). The statutory definition of "impaired state," to which § 17C-5-2(e) refers, provides:

> (1) "Impaired State" means a person:
>
> (A) Is under the influence of alcohol;
>
> (B) Is under the influence of any controlled substance;

8

(C) Is under the influence of any other drug or inhalant substance;

(D) Is under the combined influence of alcohol and any controlled substance or any other drug; or

(E) Has an alcohol concentration in his or her blood of eight hundredths of one percent or more, by weight.

W. Va. Code § 17C-5-2(a).[6] While "impaired state" contemplates a driver being "under the influence" of one or more of the specified substances, the term "under the influence" is not explicitly defined. *See id.* Therefore, we consider the commonly accepted usage of this phrase to determine its meaning. *See* Syl. pt. 6, in part, *Cohen*, 175 W. Va. 525, 336 S.E.2d 171.

---

[6] This statutory language also remains the same following two recent amendments to this section. *See* W. Va. Code § 17C-5-2(a) (eff. 2020); W. Va. Code § 17C-5-2(a) (eff. 2023).

Generally, "under the influence" contemplates that a person ingested,[7] consumed,[8] took,[9] or used[10] a particular substance, such as alcohol, drugs, or controlled

---

[7] *See, e.g.*, *State v. Taylor*, 966 N.W.2d 510, 518 (Neb. 2021) ("[T]he phrase 'under the influence of alcoholic liquor or of any drug' requires the *ingestion* of alcohol or drugs in an amount sufficient to impair to any appreciable degree the driver's ability to operate a motor vehicle in a prudent and cautious manner." (emphasis added; citation omitted)); *Cotter v. State*, 738 P.2d 506, 508 (Nev. 1987) (per curiam) (concluding that meaning of "under the influence" "embraces only those individuals who *ingest* [enumerated] substances . . . to a degree that renders them incapable of safely driving or exercising actual physical control of the vehicle" (emphasis added; quotations and citation omitted)).

[8] *See, e.g.*, *State v. Souther*, 169 A.3d 927, 928 n.1 (Me. 2017) ("[A] person is under the influence if the person's physical or mental faculties are impaired however slightly or to any extent by the substance or substances that the person *consumed*." (emphasis added; quotations and citation omitted)); *People v. Bowden*, No. 357976, 2022 WL 16859166, at *7, ___ N.W.2d ___, ___ (Mich. Ct. App. Nov. 10, 2022) ("To prove a person was 'under the influence' of alcoholic liquor, a controlled substance, or other intoxicating substance, the prosecution must prove that defendant's ability to drive was substantially and materially affected by *consumption* of the relevant substance." (emphasis added; quotations and citations omitted)).

[9] *See, e.g.*, *State v. Parisi*, 831 S.E.2d 236, 243-44 (N.C. 2019) ("[A] person is under the influence of intoxicating liquor or narcotic drugs . . . when he has drunk a sufficient quantity of intoxicating beverages or *taken* a sufficient amount of narcotic drugs to cause him to lose the normal control of his bodily or mental faculties, or both, to such an extent that there is an appreciable impairment of either or both of those faculties." (emphasis added; quotations and citation omitted)); *Spreeman v. State*, 278 P.3d 1159, 1164 (Wyo. 2012) ("[T]he phrase 'under the influence of intoxicating liquor' means that a person has *taken* into his stomach a sufficient quantity of intoxicating liquor so as to deprive him of the normal control of his bodily or mental faculties." (emphasis added; quotations and citation omitted)).

[10] *See, e.g.*, *People v Bui*, 103 Cal. Rptr. 2d 908, 913 (Ct. App. 2001) ("A person is under the influence . . . when, as a result of *using* methamphetamine, his physical or mental abilities are impaired to such a degree that he no longer has the ability to drive his vehicle with the caution characteristic of a sober person of ordinary prudence under the same or similar circumstances." (emphasis added)); *State v. Stiles*, 998 P.2d 703, 708 (Or. Ct. App. 2000) ("[T]he phrase 'being under the influence of a controlled substance' . . . necessarily encompasses all cases in which the state contends that the defendant's *use* of a

substances, and that substance has impaired the person's ability to operate a motor vehicle. While this Court has not defined the term, many other courts have used the plain and ordinary meaning to apply similar statutes. For example, the Court of Appeals of South Carolina has said that "[a] driver is 'under the influence' when ingestion of drugs or alcohol results in the impairment of the driver's faculties, impairs the driver's ability to operate the vehicle with reasonable care, or impairs the driver's ability to drive as a prudent driver would operate the vehicle." *Kennedy v. Griffin*, 595 S.E.2d 248, 251 (S.C. Ct. App. 2004) (citing S.C. Code Ann. § 56-5-2930). The Appellate Court of Illinois defines "under the influence" similarly: "A defendant is under the influence when, as a result of consuming alcohol or any other intoxicating substance, his mental or physical faculties are so impaired as to reduce his ability to think and act with ordinary care." *People v. Halerewicz*, 2 N.E.3d 333, 338-39 (Ill. App. Ct. 2013) (referencing 625 Ill. Comp. Stat. 5/11-501(a)(2); quotations and citation omitted). Likewise, the Court of Appeals of Georgia recognizes that the operator of a motor vehicle is under the influence of alcohol "'to the extent it is less safe for the person to drive'" a motor vehicle than if he were not so affected. *Moss v. State*, 390 S.E.2d 268, 269 (Ga. Ct. App. 1990) (quoting Ga. Code Ann. § 40-6-391(a)(1)).[11] Applying the plain language of the statute and consistent with this persuasive authority, we

---

controlled substance materially contributed to culpable impairment." (emphasis added; citation omitted)).

[11] *See also Bloomfield Twp. v. Kane*, 839 N.W.2d 505, 514 n.10 (Mich. Ct. App. 2013) (per curiam) (interpreting "under the influence" to "mean[] that the defendant was substantially deprived of normal control or clarity of mind" (quotations and citation omitted)).

now hold that a person is "under the influence" if the person (1) consumed, used, took, or ingested alcohol, controlled substances, or drugs and (2) the alcohol, controlled substances, drugs, or any combination thereof impaired the person's ability to operate a motor vehicle with ordinary care.

Considering the facts of this case in light of our holding, we conclude that the record does not support the OAH's finding that Mr. Casto drove a motor vehicle while under the influence of drugs or controlled substances or the circuit court's subsequent order affirming the OAH's ruling.[12] In upholding Mr. Casto's license revocation, the OAH repeatedly recognized that a determination of whether he drove under the influence requires "all evidence is to be examined *in toto*." The OAH then discounted the results of Mr. Casto's secondary chemical test[13] because it construed the secondary chemical test statute as applying predominantly to tests designed to detect alcohol and not to those identifying evidence of drug use. *See* W. Va. Code § 17C-5-8. While this statute provides specific percentages for the consideration of alcohol evidence, it also lists the various drugs and controlled substances for which a chemical analysis of the blood should test. *See*

---

[12] The parties do not contend, and we need not consider, whether Mr. Casto drove while under the influence of alcohol because the DMV's order of revocation is specifically for "driving . . . while under the influence of controlled substances or drugs," not alcohol.

[13] The secondary chemical test in this case was the blood test that was requested by both Patrolman Montagu and Mr. Casto. The West Virginia State Police tested Mr. Casto's blood sample and found it to be negative for all of the substances on its ninety-panel drug screen.

W. Va. Code §§ 17C-5-8(d)(1) to -(10). Therefore, the OAH should not have discounted Mr. Casto's blood test results solely based on this statute.

The OAH also determined Mr. Casto was not a credible witness and discounted his testimony at the administrative hearing. Mr. Casto denied driving under the influence when he informed Patrolman Montagu that he had not used drugs or controlled substances during the patrolman's investigation, and Mr. Casto reiterated this denial when he testified during the hearing. In presenting his testimony, Mr. Casto also engaged in several rambling narratives that did not directly address whether he had driven under the influence of controlled substances or drugs. Relying on *Webb v. West Virginia Board of Medicine*, 212 W. Va. 149, 569 S.E.2d 225 (2002) (per curiam), the circuit court correctly noted that "[t]he Hearing Examiner's credibility determinations are entitled to deference by this Court."[14]

Despite the OAH's refusal to consider Mr. Casto's negative blood test results and its credibility determinations, these rulings do not lead to the conclusion that the DMV carried its burden to prove that Mr. Casto drove while under the influence of drugs. Rather, when examining the totality of the evidence, or lack of evidence in this case, we find that

---

[14] *See Webb v. W. Va. Bd. of Med.*, 212 W. Va. 149, 156, 569 S.E.2d 225, 232 (2002) (per curiam) ("This Court has recognized that credibility determinations by the finder of fact in an administrative proceeding are binding unless patently without basis in the record." (quotations and citation omitted)).

both the OAH and the circuit court erred in finding that Mr. Casto drove under the influence. The OAH cited Syllabus point 2 of *Albrecht v. State* in support of its decision to uphold Mr. Casto's license revocation:

> Where there is evidence reflecting that a driver was operating a motor vehicle upon a public street or highway, exhibited symptoms of intoxication, *and had consumed* alcoholic beverages, this is sufficient proof under a preponderance of the evidence standard to warrant the administrative revocation of his driver's license for driving under the influence of alcohol.

173 W. Va. 268, 314 S.E.2d 859 (1984) (emphasis added). The circuit court also quoted this holding and additionally relied on Syllabus point 3 of *White v. Miller*, 228 W. Va. 797, 724 S.E.2d 768 (2012), to affirm the OAH's order upholding Mr. Casto's license revocation:

> A driver's license to operate a motor vehicle in this State cannot be administratively revoked solely and exclusively on the results of the driver's horizontal gaze nystagmus test. Rather, additional evidence in conjunction with the horizontal gaze nystagmus test is required for revocation: for example, the results of other field sobriety tests; the results of a secondary chemical test; whether the vehicle was weaving on the highway; whether the *driver admitted consuming* an alcoholic beverage; whether the driver exhibited glassy eyes or slurred speech; and/or whether *the odor* of an alcoholic beverage was *detected*.

(Emphasis added). Both of these authorities require a finding that a driver actually used or ingested a substance that would impair his ability to operate a motor vehicle, either from actual consumption, as noted in *Albrecht*, or from an admission of consumption or an odor, as referenced in *White*. In other words, the evidence to support a license revocation for driving under the influence of drugs or controlled substances must show both ingestion of

14

the referenced substances *and* that the driver was impaired as a result of such use. *See generally* W. Va. Code § 17C-5-2(a)(1) (defining "impaired state"). Here, though, the evidence does not establish that Mr. Casto used or consumed controlled substances or drugs.

Unlike the majority of cases considered by this Court in which the DMV has revoked a driver's license for driving under the influence of drugs or controlled substances, the DMV has provided no evidence that Mr. Casto ingested or used these substances. Mr. Casto did not admit to having used drugs or controlled substances;[15] Patrolman Montagu did not detect an odor indicating drug use when he investigated Mr. Casto;[16] and Patrolman

---

[15] *See, e.g.*, *Frazier v. Null*, 246 W. Va. 450, 452, 874 S.E.2d 252, 254 (2022) (driver "*admitted* to smoking a bowl of marijuana" (emphasis added)); *Frazier v. Howie*, No. 20-0364, 2022 WL 4355565, at *1 (W. Va. Sept. 20, 2022) (memorandum decision) (driver "*admitted* to ingesting 'several pills earlier in the day'" (emphasis added)); *Frazier v. Simpkins*, No. 20-0313, 2022 WL 4355562, at *1 (W. Va. Sept. 20, 2022) (memorandum decision) (driver "*admitted* to having 'earlier' smoked marijuana" (emphasis added)); *Frazier v. Raschella*, No. 20-0103, 2022 WL 4355558, at *1 (W. Va. Sept. 20, 2022) (memorandum decision) (driver "*admitted* that he had ingested controlled substances that were prescribed to him" (emphasis added)); *Frazier v. Rhodenizer*, No. 20-0896, 2022 WL 2066479, at *1 n.2 (W. Va. June 8, 2022) (memorandum decision) (driver "*admitted* to taking her prescription medication prior to the stop" (emphasis added)); *Dale v. Oakland*, 234 W. Va. 106, 108, 763 S.E.2d 434, 436 (2014) (per curiam) (driver "*admitted* to [the officer] that he had 'a joint' and that he smoked marijuana in the car while driving around Moundsville" (emphasis added)).

[16] *See, e.g.*, *Simpkins*, 2022 WL 4355562, at *1 (officer "testified that he detected the *odor* of marijuana when he approached the automobile during the traffic stop" (emphasis added)); *Oakland*, 234 W. Va. at 108, 763 S.E.2d at 436 (officer "detected a strong *odor* of marijuana emanating from within [the driver's] vehicle as soon as he got behind the vehicle even before he activated the emergency lights" (emphasis added)).

Montagu did not report finding any evidence of drugs,[17] controlled substances,[18] or associated paraphernalia[19] on Mr. Casto or in his vehicle at the time of his investigation. *But see Frazier v. Yoder*, Nos. 21-0568 & 22-0112, 2023 WL 3750616 (W. Va. June 1, 2023) (memorandum decision) (DMV revoked driver's license for driving under the influence of prescription drugs but no evidence of prescription drugs found).

A finding of driving under the influence of drugs or controlled substances necessarily requires a driver to be impaired as a result of his use or consumption of drugs or controlled substances. The record in this case does not support a finding that Mr. Casto

---

[17] *See, e.g., Frazier v. Shaffer*, No. 20-0314, 2021 WL 653242, at *1 (W. Va. Feb. 19, 2021) (memorandum decision) (officer "noted that [the driver] had a *white powdery substance* on and around her nose" (emphasis added)); *Oakland*, 234 W. Va. at 108, 763 S.E.2d at 436 ("After searching [the driver's] car, the officers located a rolled 'joint' containing a green leafy substance that they deemed to be *marijuana*, a partially burnt 'joint' and an Altoids tin with a green leafy substance inside." (emphasis added)).

[18] *See, e.g., Howie*, 2022 WL 4355565, at *1 ("the trooper *observed unlabeled medication bottles* in [the driver's] automobile" (emphasis added)); *Raschella*, 2022 WL 4355558, at *1 (officer "*recovered the controlled substances* at the scene, but without accompanying evidence that they were dispensed through prescription" (emphasis added)); *Shaffer*, 2021 WL 653242, at *1 (driver "further advised [the officer] that she took *Lortab*, *Zanaflex* and *Tramadol* that evening" (emphasis added)); *Reed v. Divita*, No. 14-11018, 2015 WL 5514209, at *1 (W. Va. Sept. 18, 2015) (memorandum decision) ("According to the testimony of [the officer], during the stop, as [the driver] pulled her driver's license from her purse, [the officer] saw in plain view a plastic baggie in her purse containing pills. . . . [The officer] asked [the driver] to place her purse on the trunk of the car, and then proceeded to search it. [The officer] discovered *13 alprazolam pills* and *15 oxycodone pills* in [the driver's] purse." (emphasis added)), *abrogated on other grounds by Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021).

[19] *See, e.g., Null*, 246 W. Va. at 452, 874 S.E.2d at 254 ("A *marijuana bowl with residue* was found in the car[.]" (emphasis added)).

took or ingested drugs or controlled substances because the DMV offered no evidence that he used, consumed, ingested, or took controlled substances or drugs. As such, the DMV failed to carry its burden to prove, by a preponderance of the evidence, that Mr. Casto drove under the influence of drugs or controlled substances. Consequently, his license revocation must be reversed. *See generally Frazier v. Gaither*, No. 21-0726, 2023 WL 3992034, ___ W. Va. ___, ___ S.E.2d ___ (W. Va. June 14, 2023) (recognizing DMV's preponderance of the evidence burden of proof in license revocation cases). The OAH's finding that the evidence supported the revocation of Mr. Casto's driver's license for driving under the influence of drugs or controlled substances is not substantiated by the record evidence, and the circuit court erred by affirming the OAH's determination that Mr. Casto's license revocation was proper. *See* Syl. pt. 1, *Francis O. Day Co., Inc. v. Dir., Div. of Env't Prot.,* 191 W. Va. 134, 443 S.E.2d 602 (1994) ("Evidentiary findings made at an administrative hearing should not be reversed *unless* they are clearly wrong." (emphasis added)). Therefore, we reverse the circuit court's order upholding Mr. Casto's license revocation and remand for entry of an order rescinding Mr. Casto's revocation and reinstating his driver's license.

## IV.

## CONCLUSION

We find that the DMV has not established by a preponderance of the evidence that Mr. Casto was driving a motor vehicle while under the influence of controlled substances or drugs. Therefore, the April 9, 2021 order of the Circuit Court of Kanawha

County affirming the administrative order that upheld the revocation of Mr. Casto's driver's license is reversed, and this case is remanded for entry of an order rescinding the revocation and reinstating Mr. Casto's driver's license.

Reversed and Remanded.